1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM P. SHANNAHAN,

                          Plaintiff,

        v.

INTERNAL REVENUE SERVICE, a federal
agency,

                          Defendant.

No. 2:08-cv-00560 JLR

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

Noted for consideration: February 13,
2009

**ORAL ARGUMENT REQUESTED**

### I.   INTRODUCTION

This Freedom of Information Act ("FOIA") case arose after the Internal Revenue
Service informed Dr. Steven N.S. Cheung and his spouse Mrs. Linda Su (the "Cheungs") of
its determination that they owed approximately $17 million in additional back taxes,
penalties, and interest. Since receiving that notice, Plaintiff William P. Shannahan, the
Cheungs' tax attorney, has been trying without success to get the documents from the
Government that it relied on to make that determination. At each turn, he was directed to use
FOIA to seek that information. To date, Mr. Shannahan's efforts have failed, and now his
FOIA lawsuit faces a motion for summary judgment.

The Government's Motion for Summary Judgment ("Motion") should be denied for
several reasons. First, the Government fails to provide Mr. Shannahan or the Court with

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  detailed submissions as to why the claimed exemptions apply to the documents it has deemed

2  responsive. Second, even if the exemptions are considered, the facts in this case demonstrate

3  that summary judgment is not appropriate. Finally, any attempt at preventing Mr. Shannahan

4  from prosecuting this FOIA action on the basis of the fugitive disentitlement doctrine must be

5  rejected because he is not a fugitive and the "harsh sanction" of dismissal is not warranted.

6  ## II.   STATEMENT OF FACTS

7  **A.**   **Deficiency Notice**

8  On July 27, 2007, Mr. Blake Becker, Group Manager for the Seattle-area IRS, sent

9  two IRS Forms 4549-A examination reports ("RARs"), prepared by IRS civil examiner Ms.

10  E. Stone, to the Cheungs claiming that Dr. Cheung and Ms. Su were deficient in tax payments

11  for the years 1994 to 1998 for approximately $17 million. *See* Declaration of William P.

12  Shannahan ("Shannahan Decl."), at pp. 5-148 (RARs). Each RAR references numerous

13  documents that were in the possession of Ms. Stone when she issued the RARs, which are

14  documents relating to (1) West Coast International (Parking) Limited; (2) West Coast

15  International Limited; (3) Mr. Wan Chi Hing; (4) Ms. Ka-Wa Clara; (5) Fok and Chan, a CPA

16  firm located in Hong Kong; (6) Donna De Caro and De Caro & Associates, Dr. Cheung's

17  former accountants; and, (7) Ms. Murial Tsang, Dr. Cheung's former attorney. *See, e.g., id.* at

18  pp. 12-14, 17, 19, 22-25, 42. Given that the RARs had been issued for tax years 1994-1998,

19  and that no current taxes are at issue, it became apparent that the IRS's civil investigation of

20  the Cheungs was complete. *See* Shannahan Decl., ¶ 7.

21  **B.**   **The RAR Process.**

22  After issuing and receipt of the RAR, the taxpayer can resolve the matter by paying

23  the assessment, or can file a protest. Shannahan Decl. at 7; *see also* 26 CFR §§

24  601.105(b)(4), 601.106(d)(1). For all practical purposes, the IRS investigation is complete at

25  this point. Shannahan Decl. at ¶ 7. When protested, as here, the case is transferred to the IRS

26  Appeals Division, and the taxpayer has the opportunity to meet with an Independent Appeal

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 2
Case No. 2:08-cv-00560-JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   Officer from the IRS to negotiate an agreed resolution, often with a review of the evidence the

2   IRS relied upon in issuing the RARs.  *Id.* at ¶¶ 9 & 10.

3   Mr. Shannahan has practiced federal tax law for over 45 years and has done hundreds

4   of similar appeals.  *Id.* at ¶ 4.  In his experience with the IRS Appeals Office, parties

5   appearing before the Appeals Office often are able to address the issues of concern with the

6   Appeals Officer and reduce the amount of the alleged deficiency.  *Id.* at ¶ 9.  The Appeals

7   Office will often provide background documents so that the taxpayer or his representative can

8   adequately prepare for, and meaningfully participate in, the appeals hearing.  *Id.* at ¶ 10.  The

9   only way that this ADR-type process has any value is if the taxpayer's attorney is privy to the

10   factual and investigative information that the IRS civil examiner relied upon to determine the

11   amounts allegedly owed.  *Id.* at ¶ 10.  Put simply, without such information, the IRS Appeals

12   process becomes a one-sided affair in which the IRS holds all of the cards.  *Id.*

13   **C.   Efforts to Get IRS Documentary Support for the RARs.**

14   As an attorney and authorized representative for the Cheungs, on August 22, 2007,

15   Mr. Shannahan filed two protest letters, which triggered the appeal process, and Forms 2848

16   with the IRS.  *Id.* at pp 1-4 & 149-198 (Forms 2848) & (Protest Letters).  He further requested

17   that the IRS produce to him those documents referenced in the RAR.  *Id.* at pp. 151-154 &

18   173-176.  On November 2, 2007, Mr. Becker responded to Mr. Shannahan's request for

19   documents and stated:  "Please be advised that you may request documents from the Internal

20   Revenue Service by submitting a request under the Freedom of Information Act."  *Id.* at pp.

21   193-94 (emphasis added).

22   Given the length of time between the initial request to the IRS and Mr. Becker's

23   response, and because time was of the essence, on October 16, 2007, Mr. Shannahan filed

24   FOIA request on behalf of Dr. Cheung and Ms. Su seeking the documents referenced in the

25   RAR.  *See* Shannahan Decl., ¶ 14 & pp. 197-200 (FOIA Requests).  To a large extent, the

26   FOIA requests mirrored the contents of the RAR because Mr. Shannahan wanted to be able to

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 3
Case No. 2:08-cv-00560 JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  review the documents referenced in the RAR to ensure that he was adequately prepared to

2  address the issues before the IRS Appeals Officer. *Id.* at ¶ 14. Mr. Shannahan's FOIA

3  request was denied on December 20, 2007, with several FOIA statutory exemptions cited, but

4  no explanation of how the exemptions applied to the documents withheld. As a result, Mr.

5  Shannahan filed two appeals of the December 20, 2007 denial, one for Linda Su, and one for

6  Steven Cheung, in a timely fashion on January 14, 2008. The appeals were denied by the IRS

7  FOIA Appeals Office on March 25, 2008. *Id.* at pp.201-12.

8      On April 9, 2008, Mr. Shannahan filed two FOIA actions seeking this Court's

9  intervention in obtaining the documents at issue from the Government. *Id.* at ¶ 19. In an

10 effort to avoid the cost and expense of pursuing these FOIA cases, on April 15, 2008, Mr.

11 Shannahan wrote a letter to the IRS Appeals Office requesting the documents referenced in

12 the RAR. *Id.* at ¶¶ 213-214. There was no response to this letter. He then wrote yet a second

13 letter on June 24, 2008, again requesting the documents from the IRS Appeals Office. *Id.* On

14 July 3, 2008, Mr. Syd R. Brown II, an IRS Appeals Officer, finally responded to Mr.

15 Shannahan's request by stating that because Mr. Shannahan had instituted this FOIA action,

16 which Mr. Becker directed him to do many months earlier, the IRS Appeals Office would not

17 be providing him with any of the requested documentation. *Id.* at pp. 213-14.

18      It was not until late October 2008, some 14 months after the first request for

19 documents, that the Government <u>finally</u> produced any material. *Id.* at ¶ 20. Rather than turn

20 over the documents upon which the RARs are based, and which are expressly at the heart of

21 these FOIA requests, *id.* at ¶ 15, the Government merely regurgitated multiple copies of

22 correspondence <u>previously sent to or from Mr. Shannahan or his clients</u>. *Id.* at ¶ 20-21. Not

23 only were no "new" documents produced, the Government failed to provide a *Vaughn* index

24 or other particularized list identifying the documents being withheld. *Id.* at p. 215

25 (Transmittal Letter). Rather, it has withheld <u>everything</u> responsive that it possesses, except

26 that which it knows is already possessed by Mr. Shannahan. *Id.* at ¶ 20-21.

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 4
Case No. 2:08-cv-00560 JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

## III.   STANDARD OF REVIEW

2    In FOIA cases, summary judgment is only appropriate where the 1) "agency has met

3    its burden of proving that it fully discharged its obligations under FOIA; and 2) "the agency

4    has proven that the information that it did not disclose falls within one of the nine FOIA

5    exemptions." *Los Angeles Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880,

6    893-94 (C.D. Cal. 2006) (citing 5 U.S.C. § 552(a)(4)(B)).  The Government has the burden of

7    establishing both of the foregoing while all of "the underlying facts and possible inferences

8    are construed in favor of the FOIA requester." *Id.*

9

## IV.   ARGUMENT

10   The Government has not met its burden and its Motion should be denied.  First, the

11   Government has not provided adequate detail in its declarations to permit a meaningful

12   challenge or judicial determination of the applicability of the exemptions that it claims.

13   Second, to the extent that it has claimed exemptions, they are not applicable on this record.

14   Third, the so-called fugitive disentitlement doctrine is not properly applicable here, as doing

15   so would broadly expand the doctrine, and would be unduly punitive.

16   **A.   The FOIA Has A Broad Public Purpose and Narrow Exceptions.**

17   The FOIA serves the important public purpose of ensuring that our government

18   functions fairly by requiring that the information it generates and relies upon is equally

19   available to the citizenry.  The public access to Government records is essential to permitting

20   our republican form of democracy to function properly.  *Pac. Fisheries, Inc. v. United States*,

21   539 F.3d 1143, 1147 (9th Cir. 2008).  "[D]isclosure, not secrecy, is the dominant objective of

22   the Act," and accordingly, the FOIA exemptions are construed narrowly.  *Dep't of Interior v.*

23   *Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001).

24   Indeed, just recently, the new Administration has directed its constituent agencies to

25   reconfigure their approach to FOIA so as to enhance disclosure.  *See* Declaration of David J.

26   Lenci ("Lenci Decl."), pp. 58-59 (Obama Memo).  The President notes that "A democracy

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 5
Case No. 2:08-cv-00560-JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    requires accountability, and accountability requires transparency." *Id.* The FOIA contributes

2    to this aspiration by enabling citizens to check against governmental corruption, and to

3    otherwise hold government actors accountable to the public. The FOIA accordingly mandates

4    full agency disclosure of information that is responsive to a FOIA request unless the

5    information <u>clearly</u> falls into one of its nine statutory exceptions. The effects of the new

6    glimmer of "sunshine" have been felt in this District. For example, in another FOIA case, the

7    parties have stipulated for extra time for the Government to re-evaluate its withholding in

8    light of President Obama's directive. *See* Lenci Decl., at pp 60-62.[1]

9    **B.    The Government Has Not Provided Sufficient Detail to Permit Non-Disclosure.**

10          **1.    The Importance of a *Vaughn* Index or Detailed Affidavits.**

11          Agencies that withhold documents responsive to a FOIA request have the burden of

12   proving that the exemptions apply. *Ollestad v. Kelley*, 573 F.2d 1109, 1110 (9th Cir. 1978).

13   Yet, plaintiffs in FOIA cases, such as Mr. Shannahan, are often disadvantaged by their

14   inability to obtain discovery prior to the agency's submission of, and the court's ruling on a

15   summary judgment motion. "This lack of knowledge by the party seeking disclosure

16   seriously distorts the traditional adversary nature of our legal system." *Wiener v. FBI*, 943

17   F.2d 972, 977 (9th Cir. 1991). Accordingly, the court must assess and apply the burden of

18   proof standard "with an awareness that the plaintiff is at a distinct disadvantage in attempting

19   to controvert the agency's claims." *Ollestad*, 573 F.2d at 1110.

20          The customary way for agencies to justify withholding otherwise responsive material

21   is to submit a *Vaughn* index with the summary judgment motion, although the burden may

22   also be met if they provide sufficiently detailed affidavits describing each of the documents

23   withheld. *Wiener*, 943 F.2d at 977, n.5. Either way, the purpose of the exercise

24              is <u>not merely to inform</u> the requester of the <u>agency's conclusion</u> that a
             particular document is exempt from disclosure under one or more of the

25

---

26   [1]  Counsel for the Government was made aware of these recent events in a letter sent by Mr.
     Shannahan's counsel, but to date, has not responded. *Id.* at ¶ 10 & p. 63.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

statutory exemptions, but to afford the requester an opportunity to <u>intelligently advocate</u> release of the withheld documents and to afford the court an opportunity to <u>intelligently judge</u> the contest.

*Id.* at 979 (emphasis added). The index or affidavits must: (1) identify the documents withheld; (2) correspond each document to each statutory exemption claimed; and (3) include a "particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener*, 943 F.2d at 977. Identification must include "detailed public affidavits identifying" the withheld documents, and failure to do so justifies denial of summary judgment. *Lion Raisins v. U.S. Dep't. of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004); *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995).

The Government must disclose "as much information as possible without thwarting the claimed exemption's purpose." *Wiener*, 943 F.2d at 979. In *Wiener*, the court found that the agency's *Vaughn* index failed to provide information that would be useful to contest nondisclosure, as the affidavits made only categorical claims of exemptions without providing detail on any particular document withheld. *Id.* Conclusory affidavits and boilerplate claims of exemptions merit denying summary judgment and ordering the government to supply a more specific accounting of the withheld documents. *Id.*; *see also Ollestad*, 573 F.2d at 1110 (case remanded for creation of *Vaughn* index or other detailed description).

## 2. The Government Has Not Provided Adequate Detail.

Here, as in the cases cited above, the affidavits submitted by the Government lack sufficient information about the nature of the documents withheld, clear delineations of which documents are withheld pursuant to which exemptions, and a document-by-document justification of how the interests protected by each exemption would be impaired.

*Wiener* exemplifies what the Ninth Circuit requires. In *Wiener,* the Government claimed that multiple exemptions applied to redacted portions of documents as well as to entire documents, and it corresponded the statutory exemptions claimed to each redaction or

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 7
Case No. 2:08-cv-00560-JLR
K:\2057925\00001\21366P2BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    withheld document. 943 F.2d at 978. Each claimed exemption was then matched with one of

2    nine general categorical descriptions of the particular information withheld. *Id.* Thereafter

3    the affidavit provided a descriptive narrative for each category of information explaining why

4    nondisclosure was proper for each exemption claimed. The court found that the categorical

5    explanations were boilerplate, the affidavits lacked the required specificity, and that the

6    overall justification provided for withholding was clearly inadequate. *Id.* at 978-79.

7        <u>Identification.</u> The affidavits found inadequate in *Wiener* were much more detailed

8    than those presented here. While the *Wiener* court had nine descriptive categories of

9    documents to consider, here the Government provides only generalized descriptions of four

10   broad categories of responsive documents. *See* Mahaney Decl. ¶¶ 16-19. For each of the four

11   categories of documents, the Government provides only a general description of some of the

12   types of information contained in the category. For example, the category of Working Papers

13   consists of 5280 responsive pages of "revenue agents' and special agents' notes,

14   categorizations, analysis, research, calculations, and summaries." Mahaney Decl. ¶ 17. The

15   general description of the Working Papers does not indicate the underlying sources of the

16   documents, which ones were created as opposed to obtained by the IRS, which page numbers

17   contain what type of information, or even whether or not the description provides even an

18   exclusive listing of the broad types of information contained therein. *See id.* The description

19   contains broad generalizations, qualifications, and obfuscations such as "prepared <u>or</u>

20   gathered" with respect to source, "<u>and/or</u>" with respect to contents, and terms such as

21   "<u>portions</u>," "<u>for example</u>," and "<u>certain pages</u>" for specificity in the withheld documents. *Id.*

22   (emphasis added); *compare with Wiener*, 943 F.2d at 978-79 (emphasizing "may," "either,"

23   "or," and "for example" as representing the type of boilerplate explanations that are

24   <u>inadequate</u> in categorical descriptions). Ultimately the court in *Wiener* found that the <u>*Vaughn*</u>

25   <u>index</u> supplied provided no information that would be useful to contest nondisclosure, as there

26   was insufficient information about the particular documents withheld, and the court should

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

1   similarly deny summary judgment on this ground. *Id.* at 979; *Ollestad*, 573 F.2d at 1110.

2       <u>Correlating Documents to Exemptions.</u>   The Government must clearly delineate which

3   documents correspond to which exemptions. *See Pac. Fisheries, Inc. v. United States*, 539

4   F.3d 1143, 1149 (9th Cir. 2008); *Ollestad*, 573 F.2d at 1110. The Government affidavits

5   provide only large amorphous ranges of page numbers of unspecified responsive documents

6   which are withheld under multiple exemptions. *See, e.g.*, Mahaney Decl. ¶¶ 17(a) (noting that

7   certain pages are exempt "in whole or in part" under exemption 5 and providing a large range

8   of page numbers without further detail of what each page or document contains); 17(b)

9   (reciting that all 5280 pages of one broad category of documents are exempt under exemption

10   7(A)); 17(d) (reciting that all 5280 pages of the broadest category of documents are exempt

11   under exemption 3); 17(f) (reciting that exemption 6 applies to a large range of page numbers

12   for one of the categories of documents). This is insufficient under Ninth Circuit law.

13       This byzantine juxtaposition of page numbers from undifferentiated documents with

14   exemption section numbers is a far cry from the document-exemption matching that the Ninth

15   Circuit requires. It does not permit intelligent advocacy against the claimed exemptions, nor

16   does it permit the Court to make an independent determination of the claimed exemptions'

17   applicability. *See Wiener*, 943 F.2d at 979; *see also Hall v. U.S. Dep't. of Justice*, 552 F.

18   Supp. 2d 23, 27-28 (D.D.C. 2008) (affidavit and *Vaughn* index insufficient when using

19   general statements and failed to correspond each document to each exemption). The

20   Government has failed to sufficiently delineate which documents correspond to which

21   claimed exemption and, thus, its motion should be denied for that reason alone.

22       <u>Particularized Explanation.</u>   With the four broad descriptions of the categories of

23   documents withheld, the Government provides little more than a single paragraph, applicable

24   by reference to all of the categories, as a complete justification for the application of each of

25   the statutory exemptions that it claims. *Compare, e.g.*, Mahaney Decl. ¶¶ 16(b) (exemption

26   7(A)'s applicability to the first category of documents), 16(c) (exemption 7(E)'s applicability

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 9
Case No. 2:08-cv-00560-JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   to the first category of documents) *with* Mahaney Decl. ¶¶ 17(b), 18(b), 19(b) (exemption

2   7(A)'s applicability to the other three categories of documents, relying solely on ¶ 16(b)'s

3   justification), ¶¶ 17(c), 18(c) (exemption 7(E)'s applicability to two other categories of

4   documents, relying solely on ¶ 16(c)'s justification). As *Wiener* requires a document by

5   document justification, the conclusory justifications set forth by the Government in this case

6   for withholding are insufficient, and the Court should deny summary judgment on this basis

7   with respect to each of the exemptions claimed. *See Wiener*, 943 F.2d at 979; *see also*

8   *Fiduccia v. U.S. Dep't. of Justice*, 185 F.3d 1035, 1046 (9th Cir. 1999) (holding agency's

9   recitation of exemptions and corresponding page numbers, without tailoring each exemption

10  to a particular document was inadequate); *Assassination Archives and Research Ctr., Inc. v.*

11  *C.I.A.*, 903 F. Supp. 131, 132 (D.D.C. 1995) (observing Ninth Circuit requires "document-by-

12  document particularized explanations" for the exemptions claimed).

13      Moreover, nothing in the Government's affidavits suggests, let alone demonstrates,

14  that the Government undertook any efforts whatsoever to segregate portions of the documents

15  that may not be fully covered by an exemption. *See*, *e.g.*, 5 U.S.C. § 552(b) (non-exempt

16  segregable documents must be produced); *Pac. Fisheries*, 539 F.3d at 1149 (same). The

17  failure to provide detail on the segregability of the documents is invited error for the court.

18  *See Church of Scientology of Cal. v. U.S. Dep't. of Army*, 611 F.2d 738, 743-44 (9th Cir.

19  1979) (holding that failure to issue findings on segregability was error).

20  **C.**   **FOIA Exemption 5 and the Deliberative Process Privilege Are Not Applicable.**

21      **1.**   **Deliberative Process Privilege Does Not Warrant Summary Judgment.**

22      In addition to the Government's failure to properly identify the documents being

23  withheld, its assertion of exemptions to production are also insufficient to support summary

24  judgment. The deliberative process privilege is not a proper basis for granting the

25  Government's Motion. First, this argument fails for several reasons.

26

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 10
Case No. 2:08-cv-00560-JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

1    First, the Government has not properly invoked the deliberative process privilege.

2  The invocation of the deliberative process privilege is not a mere formality and must be made

3  by an Agency head, or someone designated to make such decisions by an Agency head. *See,*

4  *e.g., Marriot Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1308 (Fed. Cir. 2006); *cf.*

5  *Chao v. Westside Drywall, Inc.*,--F.R.D.--, 2009 WL 35271, at *4 (D. Or. Jan. 6, 2009); *see*

6  *also Alpha I, L.P. v. United States*, 83 Fed. Cl. 279, 288-89 (2008). Here, like in *Chao*, the

7  Government has provided no evidence that the Agency head delegated the authority to invoke

8  the privilege, nor has it demonstrated that Ms. Mahaney is a "high ranking subordinate" to

9  whom delegation may be made. *Chao*, 2009 WL 35271 at *4; *see also Alpha*, 93 Fed. Cl. at

10  290 (IRS Commissioner or official with delegated authority must assert privilege).[2] Given

11  these procedural failures, summary judgment based on the deliberative process privilege is not

12  appropriate. *Chao*, 2009 WL 35271 at *4-5; *Alpha*, 93 Fed. Cl. at 290.

13    Second, even assuming the privilege has been properly invoked, the Government has

14  not demonstrated that the documents are the type covered by the privilege. The purpose of

15  the privilege is to protect "documents reflecting advisory opinions, recommendations and

16  deliberations comprising part of a process by which governmental decisions and policies are

17  formulated." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). To qualify for the

18  deliberative process privilege, documents must be both "predecisional" and "deliberative."

19  *Carter v. U.S. Dep't. of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002).

20    A document is "predecisional" if it is "prepared in order to assist an agency

21  decisionmaker in arriving at his decision." *Assembly of the State of Cal. v. Dep't. of*

22  *Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (citation and quotations omitted). Here, the

23  Government has not made a particularized showing that the documents are "predecisional,"

24  and given the lack of specificity in the Government's declarations, it is impossible for the

25

26  _____

[2] An attorney or "field investigator" cannot invoke the privilege. *Chao*, 2009 WL 35271 at *4.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  Plaintiff to make a document-by-document refutation as to whether such documents are, in

2  fact, predecisional. Predecisional documents are part of the deliberative process when their

3  disclosure reveals the "agency's decision-making process in such a way as to discourage

4  candid discussion within the agency and thereby undermine the agency's ability to perform its

5  functions." *Assembly*, 968 F.2d at 920 (citations and quotations omitted). The Government

6  has not met its burden and shown that the documents at issue would harm the IRS's decision-

7  making processes. *See, e.g.*, *Formaldehyde Inst. v. U.S. Dep't of Health & Human Servcs*,

8  889 F.2d 1118, 1124 (D.C. Cir. 1989) (agency must show actual harm to decision-making

9  process); *Mead Data Cent. Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977)

10  (agency must show the harm with "specific and detailed proof").

11      In issuing the RAR, the IRS laid out its factual case for an assessment against the

12  Cheungs and the Cheungs seek only those documents relied upon by Ms. Stone in coming to

13  her decision. Thus, the Government has already essentially "revealed" any deliberative

14  process with respect to the civil assessment proceedings and therefore the privilege does not

15  apply to the specific documents in question. *See, e.g.*, *Assembly*, 968 F.2d at 922-23.[3]

16      Regarding the criminal proceedings, the Government argues that the release of Ms.

17  Stone's file would somehow interfere with the criminal case against the Cheungs. Such

18  interference, however, is speculative and unsubstantiated. Nevertheless, even if the

19  Government's unsubstantiated claims of potential interference had any substance, it is of the

20  Government's own making. It was the IRS, not Mr. Shannahan, who placed Ms. Stone's files

21  at issue by circumventing the normal procedures and instituting the civil tax assessment while

22

23

24

25

26  [3]  Notably, the Government does not provide any declaration from Ms. Stone, who is the only
individual with first-hand knowledge as to the documents for which the privilege is claimed.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   there was still an outstanding criminal proceeding.  *See* White Decl. at ¶ 10.[4]

2       Exemption 5 was intended to be interpreted "as narrowly as consistent with efficient

3   Government operation," and accordingly "it requires different treatment for materials

4   reflecting deliberative or policy-making processes on the one hand, and purely factual,

5   investigative matters on the other." *E.P.A. v. Mink*, 410 U.S. 73, 88-89 (1973).  Here the

6   Government has not segregated the factual or investigative portions of the documents, or

7   otherwise established that they are not segregable because they are "so interwoven with the

8   deliberative material."[5]  *See, e.g., Pac. Fisheries*, 539 F.3d at 1148-50 (discussing

9   segregation).  Summary judgment on this basis should be denied.

10          **2.    The Work Product and Attorney Client Privileges Do Not Apply.**

11      Given the Government's complete lack of specificity with respect to the documents, it

12  is difficult—if not impossible—for the Plaintiff to meaningfully respond to the Government's

13  assertion that certain documents are protected by either the attorney-client privilege or the

14  work-product doctrine.  In the normal course of most litigation, the parties often exchange

15  privilege logs, which are akin to a *Vaughn* index.  Here, there is no such index, or even a

16  specific affidavit, that sets out to whom and from whom the allegedly "privileged" documents

17  were exchanged.  Thus, neither the Plaintiff nor the Court can determine the validity of the

18  Government's assertion.  The same problem arises with the work product doctrine claims.

19  Those claims are even more troublesome because that doctrine only applies to those

20  documents that are made in anticipation of litigation.  *See McKenzie v. McCormick*, 27 F.3d

21

22  [4]  The justification for not commencing a civil proceeding while a criminal proceeding is pending is to

23  avoid any "potential conflict between avenues of civil and criminal discovery."  *Taylor v. IRS*, 113 T.C. 206, 212 (1999).

24  [5]  The Government's own submission shows that the withheld documents are full of factual and investigative information: the Examination Workpapers include a "summary of findings", notes,

25  calculations, and conclusions; the Agents Working Papers are documents prepared or gathered by revenue agents, and they contain "the facts or information gathered", evidence, and the sources of the

26  documents gathered; and the Interview Notes, Third Party Contacts, and Contact Sheets contain interview questions and notes.  Mahaney Decl. ¶¶ 16-18

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 13
Case No. 2:08-cv-00560-JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE (206) 623-7022

1415, 1420-21 (9th Cir. 1994). There is nothing in the Government's affidavits stating that any of the materials in Ms. Stone's files were prepared in anticipation of litigation; thus, it has not made an adequate showing that the work product privilege applies.

**D.     FOIA Exemption 7 Does Not Justify the Government's Broad Withholding.**

Notwithstanding its failure to supply sufficient information for Mr. Shannahan to challenge the claimed exemptions on an informed basis or for the Court to make an independent determination of their applicability, the Government claims that Exemption 7 justifies non-disclosure for most of the responsive documents, citing three bases from Exemption 7 to justify its assertion. In reality, none of these bases justify the broad document withholding that the Government has done in this case.

**1.     The Government Has Not Demonstrated the Harm Required by Exemption 7(A).**

Withholding under Exemption 7(A) requires a distinct showing of harm. Conclusory or boilerplate explanations of the harm that could result are insufficient to show the type of harm that is required to withhold disclosure under exemption 7(A). *Miller v. U.S. Dep't. of Agric.*, 13 F.3d 260, 263 (8th Cir. 1993); *see also Wiener*, 943 F.2d at 977. Thus, affidavits detailing the documents being withheld must describe the information withheld in order to permit an evaluation of whether the exemption is properly invoked. The Government has the burden of showing how the release will interfere with law enforcement proceedings. *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989). It has not met its burden in this case.

The fact that a defendant in an ongoing criminal proceeding might obtain documents through the FOIA that they could not otherwise get through discovery, or prior to the point at which they would be entitled to get them through discovery, does not constitute harm for the purpose of Exemption 7(A). *North*, 881 F.2d at 1097 (D.C. Cir. 1989). The government must make the showing that disclosure of the documents would "in some particular, discernible way, disrupt, impede, or otherwise harm the enforcement proceeding." *Id.*; *see also Grasso v.*

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 14
Case No. 2:08-cv-00560-JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    *IRS*, 785 F.2d 70, 75-77 (3d Cir. 1986) (rejecting IRS claim that release of memorandum

2    would interfere with enforcement proceedings). The court in *North* distinguished cases where

3    FOIA requests were tied to the criminal case, thus risking delay or disruption to the criminal

4    case. 881 F.2d. at 1099. "That concern is not pertinent, however, where, as here, the divide

5    between criminal prosecution and FOIA action is maintained." *Id.* The court noted that the

6    plaintiff "has everyman's right to file a separate FOIA action to obtain information useful in a

7    non-FOIA proceeding." *Id.* at 1099-1100.

8        The Government's sole justification for how the release of <u>any</u> of the responsive

9    documents, totaling 5,417 pages along with an electronic database, could interfere with law

10   enforcement proceedings is contained in two paragraphs. *See* White Decl. ¶ 16; Mahaney

11   Decl. ¶ 16(b) (stating in substance that premature release of any of the withheld documents

12   would undermine the law enforcement proceedings in some unexplained way). The White

13   and Mahaney Declarations' overly-general explanations are insufficient. The FOIA and

14   criminal cases are distinct proceedings, and there is no particularized showing of how the

15   early release of the withheld documents at issue here, which pertain to a civil tax assessment,

16   could impair any law enforcement proceedings. *North*, 881 F.2d at 1097 (holding that

17   premature release of information in a criminal proceeding is an insufficient basis for

18   withholding under 7(A)). The FOIA requests at issue here do not seek those documents that

19   were used exclusively in the criminal case. Rather, the request for documents here is in

20   reference to a <u>civil</u> collection matter, and none of the FOIA requests sought criminal

21   investigative documents. *See* Shannahan Decl., ¶¶ 10-12, 14.

22       As noted previously, any potential interference with the criminal proceedings in this

23   case is completely of the Government's own doing. As Mr. White declared, it is customary to

24   hold in abeyance any civil IRS proceeding while there is an active criminal proceeding

25   outstanding. White Decl., ¶ 10. The reason for this is obvious: the rules of document

26   disclosure in the civil context are different than those in the criminal context. *Taylor*, 113

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 15
Case No. 2:08-cv-00560 JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

1  T.C. at 212 (1999). Thus, the Government has created the very situation of which it now

2  complains. Its predicament is further compounded by the fact that numerous IRS civil

3  officials have told Mr. Shannahan to seek the documents he wants through the FOIA. *See*

4  Shannahan Decl. at pp 193-96. Ultimately, the Government's desire to use the FOIA and its

5  exemptions as both a shield and sword is fundamentally at odds with the FOIA's purpose and

6  should be rejected.

7      Finally, the mere fact that the documents may relate to a law enforcement

8  investigation does not justify withholding under the exemption. For example, in *Crooker v.*

9  *Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 65-67 (D.C. Cir. 1986), the court

10  rejected a claim that all documents found in an investigative file were categorically exempt, as

11  blanket exceptions are not recognized under the FOIA. Here, the Government likewise seeks

12  to convert this exemption into a blanket justification for withholding all of the otherwise

13  responsive documents simply because of their undemonstrated relation to law enforcement

14  proceedings. Motion at 15. In sum, the Government has made no showing that the actual

15  documents alleged to have been created or assembled in the civil assessment investigation are

16  exempt under Exemption 7(A) and summary judgment should be denied on this basis.

17      **2.    Exemption 7(C) Does Not Permit the Broad Withholding that the
         Government Claims**[6]

18

19      The Government cannot withhold entire paragraphs, pages, or documents under this

20  exception where the privacy interests of the informant or other protected individual can be

21  protected by redacting their name or other identifying information. *Wiener*, 943 F.2d at 984.

22  In *Wiener* the court found it inappropriate to withhold entire documents where redaction

23  ────────────────────────
    [6]   The Government also asserts that it is relying on FOIA exemption 6. Motion at 18, n.3. Exemption

24  6 protects "personnel and medical files and similar files" where disclosure "would constitute a clearly
    unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)6). No personnel, medical, or similar

25  files were requested, and even if the Government's supporting declarations had detailed an appropriate
    application of this exception, they have not provided any explanation, as explained in the main, for

26  why the identifications that would invade the privacy of third parties cannot be segregated. *See* 5
    U.S.C. § 552(b) (requiring segregation).

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE (206) 623-7022

1   would have protected individual privacy. *Id.*; *see also Church of Scientology Intern. v. U.S.*
2   *Dep't. of Justice*, 30 F.3d 224, 230-32 (1st Cir. 1994) (holding that general statements that
3   documents could not be segregated were insufficient to justify withholding under exemption
4   7(C)). The Government <u>has not provided a single responsive page with information redacted,</u>
5   but has withheld the entirety of <u>every document</u> allegedly containing identifying information.
6   The affidavits supporting its decision provide no detail about the types or volume of
7   identifying information that the documents contain, and they provide no explanation for why
8   redaction is impractical. Accordingly, summary judgment should be denied based on this
9   exemption. *See, e.g., Hronek v. DEA*, 16 F. Supp. 2d 1260, 1272, 1278-79 (D. Or. 1998) *aff'd*
10  *on other grounds* 7 Fed. Appx. 591 (9th Cir. 2001) (failure to provide sufficient factual
11  information or explanation why information could not be redacted made agency's withholding
12  under exemption 7(C) insufficient).

13            **3.     The Government Has Not Demonstrated that Investigative Techniques**
              **and Procedures are at Risk of Being Disclosed as Per Exemption 7(E).**
14

15           Exemption 7(E) permits withholding of documents disclaims particular investigatory
16  techniques and procedures employed by law enforcement, but it also requires a statement or
17  summary of those means. *Long v. U.S. Dep't. of Justice*, 450 F. Supp. 2d 42, 78-79 (D. D.C.
18  2006). Exemption 7(E) also permits withholding of law enforcement guidelines that are
19  sensitive, but the Government makes no showing that such guidelines were at issue, nor do
20  Mr. Shannahan's FOIA requests ask for such information.

21           The techniques or procedures that are generally afforded protection under this
22  exception are only those that are not well-known to the public, which is a showing that the
23  government has the burden. *Judicial Watch, Inc. v. U.S. Dep't. of Commerce*, 337 F. Supp.
24  2d 146, 181-82 (D.D.C. 2004). The exception aims to prevent disclosure of the government's
25  secret techniques and procedures; not information that is divorced or segregable from the
26  sensitive methods that were used to gather it.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Conclusory claims of the applicability of this exemption are insufficient to justify

2    withholding. *Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496,

3    501 (D.D.C. 1997) (conclusory statement that release of basic investigatory tactics description

4    would risk circumvention of the law was insufficient to justify withholding under exemption

5    7(E)); *see also Feshbach v. SEC*, 5 F. Supp. 2d 774, 786-87 (N.D. Cal. 1997) (finding single

6    declaration referring primarily to one category of documents to be insufficient for 7(E)

7    withholding). For example, in *Voinche v. FBI*, 412 F. Supp. 2d 60, 69 (D.D.C. 2006) the

8    court found that a recitation of the statutory language along with an affidavit that stated that

9    the techniques discussed in the withheld documents were not generally known and release

10   would risk circumvention of the law, was insufficient to justify withholding the documents.

11   The court remanded, requiring the government to provide a detailed *Vaughn* index with a

12   corresponding segregability analysis. *Id*.; *see also PHE, Inc. v. Dep't of Justice*, 983 F.2d

13   248, 251-52 (D.C. Cir. 1993) (government affidavit did not justify withholding government

14   guidance for legal determinations when it did not specifically address how disclosure would

15   enable circumvention of the law, or whether or not portions were severable).

16   Here the government offers an even more cursory justification for withholding, which

17   is based exclusively on a single paragraph in one of the declarations. *See* Mahaney Decl. ¶

18   16(c). The explanation offered states simply that the withheld documents describe "the

19   techniques and procedures undertaken" by the agent, and with respect to the investigation, and

20   it offers no suggestion that secret or sensitive government investigative procedures would be

21   revealed by disclosure of the responsive documents. The Mahaney Declaration provides even

22   less information than was provided in *Judicial Watch, Inc.*, *Smith*, *Feshbach*, and *Voinche*,

23   and accordingly summary judgment should be denied on this basis.[7]

24   To be clear, the FOIA requests here do not seek disclosure of law enforcement

25

26   ───────────────────────
     [7] Neither the Motion nor the declarations discuss whether any such references are segregable; thus,
     summary judgment is not appropriate. *PHE, Inc.*, 983 F.2d at 251-52.

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 18
Case No. 2:08-cv-00560 JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

1    techniques or manuals, nor do they seek the guidelines used by Ms. Stone in creating the

2    RAR. They seek only the actual documents she used and relied on in creating her RARs, all

3    of which were actually <u>identified</u> in the RARs. *See* Shannahan Decl. at ¶¶ 10-14; 21.

4    **E.      The Government Has Not Established that FOIA Exemption 3 Applies.**

5           The Government further relies on FOIA Exemption 3 and 26 U.S.C. § 6103(e)(7),

6    which permit the Government to withhold taxpayer information when it would "seriously

7    impair Federal tax administration." Tax administration is defined as assessment, collection,

8    enforcement, litigation, publication, and statistical gathering functions under internal revenue

9    laws and related statutes. 26 U.S.C. § 6103(b)(4)(B). The Government's determination is

10   subject to de novo review. *Long v. IRS*, 742 F.2d 1173, 1181-82 (9th Cir. 1984); *Church of*

11   *Scientology Intern. v. IRS*, 845 F. Supp. 714, 720 (C.D. Cal. 1993).

12          It is the Government's burden to prove that the withheld documents are return

13   information, and that their release would <u>seriously</u> impair tax administration. *DeSalvo v. IRS*,

14   861 F.2d 1217, 1221-22 (10th Cir. 1988); *Linsteadt v. IRS*, 729 F.2d 998, 1001-02 (5th Cir.

15   1984). To meet its burden, the Government must provide sufficient information to permit a

16   reviewing court to make <u>an independent determination</u> that the withheld documents constitute

17   return information, and that if disclosed, they would impair tax administration. *See, e.g.*,

18   *DeSalvo*, 861 F.2d at 1221-22; *Grasso*, 785 F.2d at 77 (no impairment from memorandum

19   regarding interview with IRS). The Government, again, has not met its burden.

20          Conclusory statements about the applicability of the exemption or the potential

21   impairment to tax administration are not sufficient to permit a reviewing court to make an

22   independent determination. The affidavits submitted must provide the requisite facts and

23   details to justify withholding. *Kamman*, 56 F.3d at 49 (holding that failure to set forth facts

24   was fatal to government's claim, and finding that documents collected after determination of

25   liability were likely not return information). In *Osborn v. IRS*, the court vacated and

26   remanded a lower court's determination that documents requested by subjects of civil and

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 19
Case No. 2:08-cv-00560 JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   criminal tax enforcement proceedings were exempt under exemption 3 and § 6103 where the

2   affidavits supplied were too general and conclusory to permit the court to meaningfully

3   review the claimed exemptions. 754 F.2d 195, 197 (6th Cir. 1985). On remand, the court

4   required that a *Vaughn* index be supplied in order to justify the bases for withholding. *Id.*

5       Here, the Government has merely provided boilerplate recitations that the release of

6   the responsive information would impair tax administration, and it has not delineated for Mr.

7   Shannahan or the Court the requisite facts and details necessary to evaluate the applicability

8   of the exception. Even if it were possible to conclude that the information withheld were all

9   taxpayer information, a question that the affidavits alone do not answer, mere statements that

10  tax administration will be impaired are not enough to satisfy the Government's burden of

11  proof. Indeed, there is no declaration from IRS Agent Molly Mahoney or from IRS Agent

12  Stone, the people who actually gathered and used these documents. Surely they would be the

13  IRS personnel in the best position to explain the necessary justification, if there is one. The

14  fact that the record does not contain any such declarations leads to a reasonable inference that

15  no such substantive justification exists.

16      The Government's justification in support of withholding the IRS Special Agent

17  Report ("SAR") and factual information attached thereto exemplifies its conclusory

18  justifications for withholding information. Only one superficial declaration submitted by

19  someone not even involved in the matter (D. Neyhart) even suggests that the declarant

20  reviewed the final version of the SAR and corresponding exhibits. *Compare* Neyhart Decl. ¶

21  8 (indicating personal review) *with* Mahaney Decl. ¶ 3 (stating that she did not review final

22  SAR or SAR exhibits); White Decl. (no mention of SAR or SAR exhibits); Freeman Decl. (no

23  mention of SAR or SAR exhibits). The Nyhart declaration does not claim, let alone show,

24  that the release of either the SAR or the current exhibits would impair tax administration, and

25  as this is the Government's burden, summary judgment should be denied.

26

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

F.   **The Fugitive Disentitlement Doctrine Does Not Preclude Mr. Shannahan from Obtaining Relief.**

The fugitive disentitlement doctrine does not apply in this case. As this Court has already noted, dismissing a case under the fugitive disentitlement doctrine is a "harsh sanction", which the Supreme Court has cautioned against. *See* Court's July 11, 2008 Order, p. 3 (Dkt. # 12) (citing *Degen v. United States*, 517 U.S. 820, 827 (1996)); *see also Ortega-Rodriguez v. United States*, 507 U.S. 234, 247 (1993).

In *Degen*, the Court held that courts should first consider numerous other measures before "resorting to a rule forbidding all participation by the absent claimant." *Degen*, 517 U.S. at 826. Such considerations include exercising their "usual authority to manage discovery", exercising their "discretion to manage civil litigation to avoid interference with" related criminal matters, and issuing orders and sanctions for violating "legitimate" orders issued by the court. *Degen*, 517 U.S. at 826-27. Thus, the Court admonishes the lower courts to use the fugitive disentitlement doctrine cautiously, and only as a last resort.

In *Degen*, the Court noted that "Degen is a fugitive in all senses of the word", *id.* at 829, but nevertheless rejected dismissal because it was too harsh a sanction.

> It remains the case, however, that the sanction of disentitlement is most severe and so could disserve the dignitary purposes for which it is invoked. The dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits.

*Degen*, 517 U.S. at 828-29. The Court went on to find that disentitlement would be too excessive a response under the facts, even while admitting that there was no question that the party was a fugitive. *Id.* The Ninth Circuit has similarly recognized that the invocation of the fugitive disentitlement doctrine is purely discretionary and should not be done lightly. *See, e.g., Van Cauwenberghe v. United States*, 934 F.2d 1048, 1055 (9th Cir. 1991). Generally, courts require that three factors be met before invoking the doctrine: (1) whether the plaintiff is fugitive; (2) whether there is a connection between the fugitive status and the plaintiff's

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE (206) 623-7580
FACSIMILE (206) 623-7022

1    civil action; and, (3) whether dismissal is necessary to effectuate the concerns underlying the

2    doctrine. *In re Henson*, 289 B.R. 730, 733 (Bankr. N.D. Cal. 2002) (citing *Ortega-*

3    *Rodriguez*). These elements are not met here.

4          **1.**      **There is No Fugitive in This Case.**

5        The Government has set forth no evidence demonstrating that Mr. Shannahan, the

6    Plaintiff in this case, is a fugitive from justice. Thus, as a practical matter, the fugitive

7    disentitlement doctrine is inapplicable. The Government cites to no authority that an attorney

8    of an alleged fugitive is barred from bringing a FOIA claim. To conclude otherwise would

9    require this Court to expand the fugitive disentitlement doctrine to new levels, which is

10    contrary to the Court's cautious approach announced in *Degen*.

11        While the Government provides no substantive legal argument as to why the Cheungs

12    should be considered fugitives from justice, it argues that because an indictment has issued

13    against the Cheungs, that the Cheungs did not appear at their arraignment, and a bench

14    warrant was issued for the Cheungs arrest that the Cheungs are *ipso facto* fugitives from

15    justice and therefore should be disentitled from bringing this FOIA action. *See* Motion at pp.

16    23-24 & n. 4. This evidence, standing alone, does not make the Cheungs fugitives.

17        As a matter of law, fugitive status is not so loosely defined. While the courts have not

18    precisely defined who is considered a fugitive for purposes disentitlement, common

19    definitions of "fugitive" require <u>intentional flight</u> to make such a determination. For example,

20    18 U.S.C. section 921(a)(15) defines the term "fugitive from justice" as "'any person who <u>has</u>

21    <u>fled</u> from any State to avoid prosecution for a crime or to avoid giving testimony in a criminal

22    proceeding.'" *United States v. Collins*, 61 F.3d 1379, 1385 (quoting § 921) (emphasis added);

23    *see also United States v. Durcan*, 539 F.2d 29, 31-32 (9th Cir. 1976) (intentional flight is key,

24    and government must prove flight); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, p. 496

25    (defining "fugitive" as "one who flees or tries to escape").

26        Here, the government has submitted no evidence establishing that the Cheungs fled

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 22
Case No. 2:08-cv-00560 JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    this jurisdiction to avoid prosecution. *See, e.g., Van Cauwenberghe*, 934 F.2d at 1055

2    (declining to invoke doctrine where party left jurisdiction without permission and where

3    "bench warrant for [party's] arrest is currently outstanding"). The Government's lack of

4    admissible evidence of intentional flight on behalf of the Cheungs renders a finding of

5    fugitive status inappropriate.

6         The only evidence presented by the Government is a statement from Ms. Janet

7    Freeman where she makes clear that her sole basis for believing that Dr. Cheung was a

8    fugitive comes from what newspaper articles reported about what colleagues of Dr. Cheung

9    said about his intent. Freeman Decl., ¶ 11. The articles say nothing about whether the

10   Cheungs intentionally fled the jurisdiction, and Freeman's declaration is based on hearsay

11   within hearsay, and not on personal knowledge. *See, e.g., Larez v. City of Los Angeles*, 946

12   F.2d 630, 642-43 (9th Cir. 1991) (acknowledging that newspaper articles are hearsay); ER

13   602 (requiring personal knowledge). As such, the Freeman statement should not be

14   considered by the Court and should be stricken from the record. *Blair Foods, Inc. v.*

15   *Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980). Moreover, even if the Court did

16   consider Ms. Freeman's Declaration, the Declaration is completely silent with respect to Ms.

17   Su, so it does nothing to advance the Government's assertion that Ms. Su is a fugitive from

18   justice.

19        In summary, the Government has not demonstrated that Mr. Shannahan, or the

20   Cheungs, are fugitives as a matter of law. Accordingly, the fugitive disentitlement doctrine

21   does not apply.

22        **2.    No Connection Between the Fugitive Status and FOIA Action.**

23        The Government asserts that because "there is a nexus between the documents being

24   withheld and the criminal and civil proceedings against the Cheungs" that the fugitive

25   disentitlement doctrine precludes the Cheungs from obtaining relief under the FOIA. Motion

26   at p. 25. This is not the issue. The question before the Court is not whether there is some

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 23
Case No. 2:08-cv-00560 JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    connection between the <u>documents requested</u> and a proceeding, but rather whether there is a

2    connection between Plaintiff's "fugitive status" and this FOIA proceeding. *See, e g, Barnett*

3    *v. YMCA, Inc.*, 268 F.3d 614, 619 (8th Cir. 2001) (requiring connection between fugitive

4    status and civil action). The Government's own cases bear this out.

5         For example, in *Doyle v. U.S. Dep't of Justice*, 494 F. Supp. 842 (D.D.C. 1980), *aff'd*,

6    668 F.2d 1365 (D.C. Cir. 1981) (per curiam), not only was the party seeking records the

7    actual fugitive himself, but the records he was requesting were directly related to the criminal

8    charges against <u>him;</u> neither are the case here. *Id.* at 1365. Here the only documents Mr.

9    Shannahan seeks are those that relate to a civil tax proceeding, not any that are part of a

10   criminal investigation. *See* Shannahan Decl., ¶ 14. Moreover, the support *Doyle* offers for

11   the doctrine is questionable given that much of its reasoning was overruled in *Daccarett-*

12   *Ghia v. Comm'r*, 70 F.3d 621, 626 (D.C. Cir. 1995). Similarly, the Government's citation to

13   the unpublished decision in *Maydak v. United States Department of Education*, 150 Fed.

14   Appx. 136 (3d Cir. 2005), is equally inapplicable because there the plaintiff was a fugitive

15   seeking documents for the purpose of maintaining his fugitive status. *Id.* at 137. Once again,

16   Mr. Shannahan is not seeking documents through the FOIA to circumvent the criminal

17   process but rather is only seeking those documents that Ms. Stone reviewed in issuing the

18   civil RARs, which he was directed to do by the IRS itself. *See* Shannahan Decl., ¶¶ 10-14 &

19   19; see also Lenci Decl., at ¶ 8. At bottom, the Government needs to do more than allege a

20   mere commonality between the documents and the criminal or civil proceedings. *See*

21   *Daccarett-Ghia*, 70 F.3d at 626, 629 (requiring connection between appellant's status and

22   proceedings, and finding that "mere commonality of subject matter" is insufficient to invoke

23   doctrine). Because the Government has not done so, the Court should not invoke the fugitive

24   disentitlement doctrine.

25        **3.    The Purposes of the Doctrine Would Not Be Served By Dismissal.**

26        The purposes underlying the fugitive disentitlement doctrine would not be served by

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 24
Case No. 2:08-cv-00560 JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   dismissing this FOIA action. In *Degen*, the Court set out the rationales for applying the
2   doctrine in civil maters: 1) risk of delay in determining merits; 2) unenforceability of
3   judgments; 3) compromising an on-going criminal case; 4) the dignity of the appellate
4   process; 5) and deterrence. *Degen*, 517 U.S. at 825-28. The *Degen* Court appeared to
5   discount the third, fourth, and fifth rationales, reasoning that courts had less extreme methods
6   to address the third rationale, and because the fourth and fifth did not merit disentitlement.
7   *Walsh v. Walsh*, 221 F.3d 204, 215 (1st Cir. 2000) (discussing *Degen*). In other words, courts
8   must consider "prejudice to the opponent, delay, frustration and unenforceability." *Id.*

9      None of these concerns exist here. This FOIA action was brought by Mr. Shannahan,
10  who is not a fugitive. There is no suggestion that whatever judgment is entered could not be
11  enforced. *Id.* at 628. Moreover, the Government has not pointed to any prejudice to them in
12  this case if this action proceeds. Thus, the purposes underlying the doctrine would not be
13  served by dismissing this FOIA action, and, in fact, the measure would amount to no more
14  than a punitive sanction against Mr. Shannahan and his clients, the Cheungs. *Cf. Ortega-*
15  *Rodriguez*, 507 U.S. at 248 (holding dismissal would in serve as a second punishment).

16     Finally, the Government argues that it is not possible for trial management
17  mechanisms to prevent interference with the criminal proceeding. Motion at p. 25. This
18  argument is unavailing, as the Government chose to disregard its practice of conducting civil
19  and criminal investigations separately. White Decl. at ¶ 10. By choosing to institute a civil
20  proceeding and then directing Mr. Shannahan to seek relief through the FOIA, the
21  Government essentially invited the very "interference" of which it now complains.

22  **G.    Discovery is Needed Under Federal Rule of Civil Procedure 56(f).**

23     If the Court does not deny summary judgment, it should allow discovery to go forward
24  to determine whether or not the responsive documents are appropriately withheld. The lack of
25  detail in the affidavits that the Government justifies discovery under Civil Rule 56(f) so that
26  the Mr. Shannahan can conduct discovery. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326-

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 25
Case No. 2:08-cv-00560 JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  27 (1986).  Here, Shannahan needs discovery to explore, among other issues: 1) when the

2  civil investigation was completed, which comports with the 30 Day Letter process and

3  undermines the Government's factual basis for exemptions 3 and 7; 2) how documents came

4  into the possession of IRS Agent Stone, which undermines the Government's claim that the

5  documents are exclusive to a criminal investigation; 3) the evidence that the Government

6  secretly relies upon to assert that the Cheungs are fugitives, and Mr. Shannahan is

7  consequently disentitled; 4) the originators, recipients, and deliberative processes to which

8  responsive documents relate, which underlie the Government's exemption 5 claims; 5) the

9  pervasiveness of appropriately exempt information on responsive documents, which is

10  necessary for an analysis of segregability; 6) whether responsive documents are appropriately

11  deemed to be investigative and factual in nature, which undermines the exemption 5

12  deliberative process assertions; and 7) whether or not the withheld documents contain

13  discussions of agency policies and procedures, and secret investigatory tactics, which are

14  necessary for the claimed 7(E) exemption.

15                                      **V.    CONCLUSION**

16         The Government's Motion should be denied, or alternatively, either (1) the

17  Government should be required to provide a more detailed summary of the documents it is

18  withholding, or (2) ruling on the Motion should be stayed pursuant to Civil Rule 56(f).

19         DATED this _____ day of February, 2009.

20                                      K&L GATES LLP

21

22                                      By  /s/ David J. Lenci
                                            David J. Lenci, WSBA # 7688
23                                          Michael K. Ryan, WSBA # 32091
                                            Samuel R. Castic, WSBA # 39301
24                                          Attorneys for Plaintiff
                                            William P. Shannahan
25

26

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 26
Case No. 2:08-cv-00560 JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   CERTIFICATE OF SERVICE

2

3       I hereby certify that on February 2, 2008, I electronically filed the foregoing with the

4   Clerk of Court using the CNM system which will send notification of such filing to all parties

5   of record herein.

6

7

8                                           /Shirli A. Simmons
                                          Shirli A. Simmons
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT - 27
Case No. 2:08-cv-00560-JLR
K:\2057925\00001\21366P20BQ

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022