1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM P. SHANNAHAN,

                    Plaintiff,

          v.

INTERNAL REVENUE SERVICE,

                    Defendant.

CASE NO. C08-560JLR

ORDER

This matter comes before the court on Defendant Internal Revenue Service's ("IRS")
motion for summary judgment (Dkt. # 22).  Having reviewed the papers submitted by the
parties and heard the argument of counsel, the court directs the clerk to re-note the motion for
summary judgment for consideration for July 17, 2009, and directs the parties to proceed as
described herein.

## I.    BACKGROUND

This is a dispute under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  It
arises against the backdrop of civil enforcement and criminal proceedings against Steven N.S.
Cheung and Linda Su, a.k.a. Linda Cheung ("the Cheungs"), in connection with their alleged
failure to report taxable income generated by West Coast International Limited ("WCI") and
West Coast International (Parking) Limited ("WCIP") (collectively, "the Entities").

ORDER – 1

**A.     Criminal Prosecution**

The United States Attorney's Office ("USAO") for the Western District of Washington initiated a criminal investigation of the Cheungs in the 1990s.  (Declaration of Janet Freeman ("Freeman Decl.") (Dkt. # 22-6) ¶ 5.)  In November 1998, the USAO requested assistance from the IRS in the criminal investigation.  (Declaration of Caesar White ("White Decl.") (Dkt. # 22-4) ¶ 3.)  On January 28, 2003, a grand jury returned an indictment against the Cheungs.  (Freeman Decl. ¶ 7.)  The Cheungs failed to appear for their initial appearance and arraignment, and the court issued warrants for their arrest.  (*Id*. ¶¶ 10, 12-13.)  The criminal charges remain pending in *United States v. Cheung*, Case No. CR03-037RSL (W.D. Wash.).  (*Id*. ¶¶ 8, 12.)  The USAO believes the Cheungs presently reside in the People's Republic of China.  (*Id*. ¶¶ 11, 14.)  The IRS continues to assist the USAO in investigating the Cheungs, "although the process has been somewhat stalled because of the Cheungs' failure to appear for their arraignment."  (White Decl. ¶ 8.)

**B.     Civil Examination**

The IRS commenced a civil examination of the Cheungs prior to the conclusion of the criminal proceedings.  (White Decl. ¶ 10.)  The IRS explains that while it ordinarily will not commence a civil examination until after the completion of criminal proceedings, it did so with respect to the Cheungs because the criminal prosecution had been stalled by the Cheungs's failure to appear.  (*Id*.)  On July 27, 2007, the IRS sent 4549-A Income Tax Discrepancy Adjustment Forms, commonly referred to as Revenue Agent Reports ("RAR"), to the Cheungs, reflecting the IRS's determination that the Cheungs owed additional taxes, as well as penalties and interest, of close to $17 million.  (Declaration of William P. Shannahan ("Shannahan Decl.") (Dkt. # 27) ¶ 5 & pp. 5-148.)  RARs include facts and conclusions that are typically drawn from documents in the possession of the IRS.  (*Id*. ¶ 11.)  On behalf of the

ORDER – 2

1    Cheungs, Plaintiff William P. Shannahan, the Cheungs's tax attorney, protested the RARs and

2    requested the factual and investigative documents cited and relied upon in the issuance of the

3    RARs.  (*Id.* ¶¶ 5, 12.)  Mr. Shannahan states that he requested the underlying documents

4    because without such documentation he cannot effectively represent his clients in the appeal

5    process.  (*Id.* ¶ 10.)  The IRS denied Mr. Shannahan's request.  (*Id.* ¶ 13.)

6    **C.    FOIA Requests**

7         On October 16, 2007, Mr. Shannahan filed two FOIA requests with the IRS.

8    (Declaration of Meghan Mahaney ("Mahaney Decl.") (Dkt. # 22-3) ¶ 4.)  Mr. Shannahan

9    filed the first request ("the Entity Request") on behalf of the Entities.  (*Id.*)  He filed the

10   second request ("the Cheung Request") on behalf of the Cheungs. (Shannahan Decl. at 197-

11   200.)  The Cheung Request seeks 17 categories of documents, as follows:

> 1.    The balance sheets, profit and loss statements, and the general ledger account of retained earnings for West Coast International Limited ("WCI") for the years of 1993 through 1999 inclusive which were delivered to Special Agent Mahoney in January of 2003, as per Attachment B.
>                                      . . .
>
> 2.    Any analysis, memorandum or other documents in the possession of the Internal Revenue Service computing the earnings and profits of WCI.
>
> 3.    Any and all documents reflecting all wire transfers referenced in the RAR regarding WCI . . . .
>
> 4.    The balance sheets, profits and loss statements, and the general ledger account of retained earnings for West Coast International (Parking) Limited ("WCIP") for the years 1993 through 1999 inclusive which were delivered to Special Agent Mahoney in January of 2003 as per Attachment D.
>                                      . . .
>
> 5.    Any analysis, memorandum or other documents in possession of the United States and its agencies computing the earnings and profits of WCIP.
>
> 6.    Any and all documents reflecting all wire transfers referenced in the RAR regarding WCIP per Attachment B.

ORDER – 3

7.      Any and all documents reflecting alleged ownership of Steven N.S. Cheung or Linda Su/Linda Cheung in WCI.

8.      Any and all documents reflecting alleged ownership of Steven N.S. Cheung or Linda Su/Linda Cheung in WCI.

9.      Any and all documents analyzing any and all alleged Subpart F Income for WCI.

10.     Any and all documents analyzing any and all alleged Subpart F Income for WCIP.

11.     The receipts allegedly executed by Steven N.S. Cheung and/or Linda Su/Linda Cheung from 1995 to 1998 inclusive including any and all documents analysis or reports involving the authenticity of Steven N.S. Cheung's and/or Linda Su/Linda Cheung's signature.

12.     Any and all statements, deductions, affidavits, interviews, correspondence, audio or videos of Ka-Wah Clara (Clara), relating in any way to Steven N.S. Cheung and/or Linda Su/Linda Cheung.

13.     Any and all statements, deductions, affidavits, interviews, correspondence, audio or videos of Wan Chi Hing (Wan), relating in any way to Steven N.S. Cheung and/or Linda Su/Linda Cheung.

14.     Any and all statements, deductions, affidavits, interviews, correspondence, audio or videos of Fox and Chan partners, principals and employees, relating in any way to Steven N.S. Cheung and/or Linda Su/Linda Cheung.

15.     Any and all statements, deductions, affidavits, interviews, correspondence, audio or videos of Donna DeCaro, relating in any way to Steven N.S. Cheung and/or Linda Su/Linda Cheung.

16.     Any and all statements, deductions, affidavits, interviews, correspondence, audio or video of any owner, partner or employer of De Caro and Associates, relating in any way to Steven N.S. Cheung and/or Linda Su/Linda Cheung.

17.     Any and all statements, deductions, affidavits, interviews, correspondence, audio, or videos of Murial Tsang, relating in any way to Steven N.S. Cheung and/or Linda Su/Linda Cheung.

(*Id.*)  The IRS denied the Cheung Request.  (*Id.* ¶ 15.)  Mr. Shannahan appealed the denial, and the IRS appeals office denied the appeal.  (*Id.* ¶¶ 16-17.)

ORDER – 4

1    **D.      FOIA Actions**

2          On March 20, 2008, Mr. Shannahan filed four FOIA actions.  The actions on behalf of

3    Mr. Cheung and Ms. Su, Case Nos. C08-561JLR and C08-560JLR, respectively, were

4    consolidated under Case No. C08-560JLR while the actions on behalf of WCI and WCIP,

5    Case Nos. C08-452JLR and C08-562JLR, respectively, were consolidated under Case No.

6    C08-452JLR.  On December 3, 2008, the IRS filed a motion for summary judgment (Dkt. #

7    22) in Case No. C08-560JLR.[1]  The IRS argues that it satisfied its obligations under FOIA

8    and properly withheld responsive documents pursuant to Exemptions 3, 5, 6, 7(A), 7(C), and

9    7(D).  (Mot. (Dkt. # 22) at 9-23.)  In the alternative, the IRS contends that the fugitive

10   disentitlement doctrine supports dismissal.  (*Id*. at 23-25.)

11         The IRS states that it has located 5,735 pages of documents, as well as an electronic

12   database consisting of 373 files and 35.7 megabytes of information, responsive to the Cheung

13   Request.  (Mot. at 3.)  The IRS released 318 pages to Mr. Shannahan, leaving a total of 5,417

14   pages of documents, as well as the electronic database, at issue in this case.  (*Id*.)  The IRS

15   characterizes the responsive documents as falling within five categories:

16         (1)      Examination Workpapers Documents (42 pages): "The Examination
                    Workpapers documents address a summary of findings of one issue being
17                  examined by IRS Examination and often serves as a coversheet for the
                    revenue agent's work papers . . . relating to that particular issue.  The
18                  Examination Workpapers are each supported by pages consisting of the
                    revenue agent's working papers, e.g., notes, calculations, findings and
19                  conclusions. . . . The Examination Workpapers documents were created by
                    the Internal Revenue Service . . . during the civil examination of the
20                  Cheungs and were based largely upon information obtained during the U.S.
                    Attorney's criminal investigation of the Cheungs." (Mahaney Decl. ¶ 16.)

21         (2)      Agents' Working Papers (5,280 pages): These documents consist of
22                  "revenue agents' and special agents' notes, categorizations, analysis,

23   ─────────────────────

24         [1] The IRS filed a similar motion for summary judgment in Case No. C08-452JLR with respect
     to the FOIA requests of the Entities.

25

ORDER – 5

research, calculations, and summaries." (*Id.* ¶ 17.) (A) "The Working Papers obtained from IRS Exam are documents that were prepared or gathered by the revenue agents as part of his or her determination of the Cheungs' correct income tax liability and were largely obtained from information provided from the criminal investigation of the Cheungs. These Working papers consist of the revenue agent's findings and research as to each of the topics covered by the primary Examination Workpapers documents." (*Id.*) (B) "The Working Papers obtained from IRS Criminal Investigation are documents that were prepared or gathered by the special agent as part of her determination of the Cheungs' potential criminal tax liability. These Working Papers consist of the special agent's findings and research as to the potential criminal liability of the Cheungs as well as documented evidence obtained for purposes of the criminal proceeding." (*Id.*)

(3)    Interview Notes, Third Party Contacts, and Contact Sheets (88 pages): These documents consist of "interview notes for interviews and agendas conducted with third party witnesses and proposed interview questions for the Cheungs." (*Id.* ¶ 18.) "Included within the Interview Notes and Third Party Contact Information are questions formulated prior to the interviews, handwritten notes taken during or after the interviews, and typed notes transcribed from handwritten notes. All of the Interview Notes and Third Party Contact Information were based on information gathered during the criminal investigation and any actual interviews that took place were part of the criminal investigation." (*Id.*)

(4)    Internal Correspondence (7 pages): These documents consist of "correspondence between the revenue agent and other IRS employees describing issues that arose in the course of the examination of the Cheungs . . . . The Internal Correspondence documents include e-mails between Service employees regarding the civil and criminal investigation of the Cheungs." (*Id.* ¶ 19.)

(5)    Electronic Database: The Electronic Database "was obtained from IRS Criminal Investigation and contains information that was prepared or gathered by the special agent as part of her determination of the Cheungs' potential criminal tax liability. This database consists of manipulations of bank information obtained with respect to the Cheungs, which bank information was originally obtained pursuant to a Mutual Legal Assistance Treaty with the Republic of Hong Kong." (*Id.* ¶ 20.)

ORDER – 6

The IRS does not provide a *Vaughn* index[2] in support of its motion for summary judgment. Instead, the IRS submits four declarations that discuss the withheld documents and the claimed FOIA exemptions.  (Dkt. ## 22-3, 22-4, 22-5, 22-6.)

## II.   DISCUSSION

### A.   Freedom of Information Act

FOIA establishes an enforceable right to obtain access to federal agency records, except where such records are protected from disclosure by nine exemptions.  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  FOIA "mandates 'full agency disclosure' unless information is clearly exempted under one of FOIA's nine statutory exemptions."  *Pac. Fisheries Inc. v. United States*, 539 F.3d 1143, 1147 (9th Cir. 2008).  Courts are to construe the nine FOIA exemptions narrowly. *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1112 (9th Cir. 1994).

### B.   Summary Judgment Standard in FOIA Cases

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

---

[2]  The so-called "*Vaughn* index" takes its name from the District of Columbia Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  *See also Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1227 n.1 (9th Cir. 1991).  In *Vaughn*, the D.C. Circuit rejected an agency's conclusory affidavit and required the agency to provide detailed support for its claimed FOIA exemptions.  *Vaughn*, 484 F.2d at 826-28.  Under Ninth Circuit precedent, "[a] *Vaughn* Index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption."  *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1326 n. 1 (9th Cir. 1995).

ORDER – 7

1   showing there is no material factual dispute and he or she is entitled to prevail as a matter of

2   law. *Celotex*, 477 U.S. at 323.  If the moving party meets its burden, the nonmoving party

3   must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline*

4   *v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).  This court

5   conducts a *de novo* review of an agency's response to a FOIA request.  5 U.S.C. §

6   552(a)(4)(B); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749,

7   755 (1989).

8       "Summary judgment is the procedural vehicle by which nearly all FOIA cases are

9   resolved." *Los Angeles Times Commc'ns, LLC v. Dep't of the Army*, 442 F. Supp. 2d 880,

10   893 (C.D. Cal. 2006).  The usual summary judgment does not extend to FOIA cases because

11   the facts are rarely in dispute and courts generally need not resolve whether there is a genuine

12   issue of material fact. *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 800 (9th Cir. 1996).

13   Courts instead follow a two-step inquiry when presented with a motion for summary

14   judgment in a FOIA case. *Los Angeles Times*, 442 F. Supp. 2d at 893.

15       First, courts must evaluate "whether the agency has met its burden of proving that it

16   fully discharged its obligations under the FOIA." *Id.*  The agency must demonstrate that it

17   has conducted a search reasonably calculated to uncover all relevant documents. *Zemansky v.*

18   *U.S. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985).  "The issue to be resolved is not

19   whether there might exist any other documents possibly responsive to the request, but rather

20   whether the *search* for those documents was *adequate*." *Id.* (quoting *Weisberg v. U.S. Dep't*

21   *of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original).)  An agency may rely

22   upon "reasonably detailed, nonconclusory affidavits submitted in good faith" to demonstrate

23   that the search was adequate. *Id.* (quoting *Weisberg*, 745 F.2d at 1485.)

24

25

ORDER – 8

Second, if the agency satisfies its initial burden, the court must determine "whether the agency has proven that the information that it did not disclose falls within one of the nine FOIA exemptions." *Los Angeles Times*, 442 F. Supp. 2d at 894. In meeting its burden, "the government may not rely upon 'conclusory and generalized allegations of exemptions.'" *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980) (quoting *Vaughn*, 484 F.2d at 826). As a general matter, "government agencies seeking to withhold documents requested under the FOIA have been required to supply the opposing party and the court with a '*Vaughn* index,' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener v. Fed. Bureau of Investigation*, 943 F.2d 972, 977 (9th Cir. 1991). The purpose of a *Vaughn* index "is not merely to inform the requester of the agency's conclusion that a particular document is exempt from disclosure under one or more of the statutory exemptions, but to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest." *Id.* at 979.

Finally, even if the agency satisfies the two-part test, it generally must still disclose any reasonably segregable portions of the withheld documents. Section 552(b) provides:

> Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.

5 U.S.C. § 552(b). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries*, 539 F.3d at 1148.

ORDER – 9

**C.      Adequate Search**

The court must first determine whether the IRS has met its burden in demonstrating that it engaged in an adequate search reasonably calculated to uncover all relevant documents. *See Zemansky*, 767 F.2d at 571.  The IRS argues that its search for relevant documents was reasonable, although not exhaustive.  (Mot. at 7.)  Meghan Mahaney, who spearheaded the search, contacted all IRS personnel known to have been involved with the criminal and civil investigations of the Cheungs, provided copies of the FOIA requests, asked IRS personnel whether they knew of other individuals with relevant information, and followed-up with these individuals.  (Mahaney Decl. ¶ 8.)  In response to her inquiries, Ms. Mahaney received numerous documents deemed responsive to the Cheung Request.  (*Id.* ¶¶ 9-11.)  Mr. Shannahan does not challenge the adequacy of the search.

Having reviewed Ms. Mahaney's declaration, the court concludes that the IRS has satisfied its burden in demonstrating that it engaged in an adequate search reasonably calculated to uncover all documents relevant to the Cheung Request.  Ms. Mahaney's actions constitute a reasonable search for responsive documents.  The IRS therefore has satisfied the first part of the two-part test.

**D.      Records In Possession of the USAO**

The IRS and Mr. Shannahan dispute whether certain documents held in the possession of the USAO constitute agency records.  At oral argument, counsel for the IRS suggested that, if the parties jointly approached the USAO, Mr. Shannahan would likely be allowed access to some of the documents held by the USAO.  Counsel for Mr. Shannahan agreed to this general proposal, and the court directed counsel to speak with the appropriate USAO employee at the close of the hearing.  Counsel have advised the court that the parties are in the process of

ORDER – 10

1   requesting the documents from the USAO and that this process will be resolved within the

2   coming weeks.  (*See* Dkt. # 31.)

3        The court therefore reserves the question of whether the documents in the possession

4   of the USAO constitute agency records.  The court anticipates that any dispute with respect to

5   these documents will be resolved amicably between the parties and the USAO.  The court

6   directs the parties to file a joint status report with respect to the documents held by the USAO

7   by May 22, 2009.

8   **E.    FOIA Exemptions**

9        The IRS argues that the withheld documents are exempt from disclosure under FOIA

10  Exemptions 3, 5, 6, 7(A), 7(C), and 7(E).  (Mot. at 9-23.)  Mr. Shannahan challenges these

11  designations, asserting that the IRS has failed to present sufficient detail regarding both the

12  withheld documents and the applicability of the claimed exemptions.  (Resp. (Dkt. # 25) at 6-

13  10.)  He contends that the IRS should submit either a *Vaughn* index or more detailed

14  declarations in order to provide him and the court with adequate information to evaluate the

15  IRS's decision to withhold the documents.  (*Id*.)  Mr. Shannahan requests that the court order

16  limited discovery to determine whether the documents have been properly withheld under the

17  claimed exemptions.  (*Id*. at 25-26.)

18       **1.    Exemption 3 and 26 U.S.C. § 6103**

19       Exemption 3 of FOIA incorporates nondisclosure protections established in other

20  federal statutes.  Exemption 3 protects from disclosure "matters that are . . . specifically

21  exempted from disclosure by statute (other than section 552b of this title) provided that such

22  statute (A) requires that the matters be withheld from the public in such a manner as to leave

23  no discretion on the issue, or (B) establishes particular criteria for withholding or refers to

24  particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  26 U.S.C. § 6103(a)

25

ORDER – 11

1  prohibits the disclosure of returns or return information and qualifies as a statute that exempts

2  disclosure within the meaning of 5 U.S.C. § 552(b)(3).  *Kamman v. U.S. Internal Revenue*

3  *Serv.*, 56 F.3d 46, 48 (9th Cir. 1995); *Johnson v. Comm'r*, 239 F. Supp. 2d 1125, 1137 (W.D.

4  Wash. 2002).  Section 6103(a) provides that "[r]eturns and return information shall be

5  confidential," specifying that "no officer or employee of the United States . . . shall disclose

6  any return or return information obtained by him in any manner in connection with his service

7  as such an officer or an employee or otherwise or under the provisions of this section.  For

8  purposes of this subsection, the term 'officer or employee' includes a former officer or

9  employee."  26 U.S.C. § 6103(a).  The statute defines "return information" to include:

> 10 [A] taxpayer's identity, the nature, source, or amount of his income, payments,
> receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability,
> 11 tax withheld, deficiencies, overassessments, or tax payments, whether the
> taxpayer's return was, is being, or will be examined or subject to other
> 12 investigation or processing, or any other data, received by, recorded by, prepared
> by, furnished to, or collected by the Secretary with respect to a return or with
> 13 respect to the determination of the existence, or possible existence, of liability (or
> the amount thereof) of any person under this title for any tax, penalty, interest,
> 14 fine, forfeiture, or other imposition, or offense. . . .

15  26 U.S.C. § 6103(b)(2)(A).  Section 6103 authorizes the IRS to disclose return information to

16  a taxpayer so long as "the Secretary determines that such disclosure would not seriously

17  impair Federal tax administration."  26 U.S.C. § 6103(e)(7).

18      The IRS argues that all of the withheld documents fall under Exemption 3 because

19  their disclosure would constitute a serious impairment of federal tax administration.

20  (Mahaney Decl. ¶¶ 16(d), 17(d), 18(d), 19(c), 20(c); White Decl. ¶¶ 14-15.)  Mr. White

21  declares that he has determined that disclosure of the withheld documents would seriously

22  impair federal tax administration.  (White Decl. ¶ 15.)  Mr. Shannahan responds that the IRS

23  has not met its burden in providing sufficient information for either him or the court to

24  evaluate whether Exemption 3 applies.  (Resp. at 19-20.)  He characterizes the declarations

25

ORDER – 12

1   submitted by the IRS as providing "boilerplate recitations" instead of describing the facts and

2   details necessary to evaluate the applicability of Exemption 3.  (*Id.* at 20.)

3        The court concludes that the IRS has not satisfied its burden in demonstrating with

4   sufficient particularity that the withheld documents qualify as return information under 26

5   U.S.C. § 6103(b)(2)(A).  The Ninth Circuit requires the IRS to submit more than mere

6   "conclusory and generalized allegations" in order to meet its burden of demonstrating that

7   documents qualify as return information exempted from disclosure under Exemption 3 and 26

8   U.S.C. § 6103(a).  *Kamman*, 56 F.3d at 49; *see also Osborn v. U.S. Internal Revenue Serv.*,

9   754 F.2d 195, 197 (6th Cir. 1985).  Neither the court nor Mr. Shannahan can adequately

10  evaluate whether the documents qualify as return information based on the four declarations

11  submitted by the IRS.  The declarations clearly identify the general categories of documents

12  at issue.  They do not, however, identify particular documents.  Although the IRS correctly

13  observes that a *Vaughn* index is not necessary in all cases, the four declarations do not serve

14  as an adequate alternative in this case.  In essence, the IRS asks the court and Mr. Shannahan

15  to trust its own assessment as to the nature of the documents.  The declarations do not permit

16  the court to engage in its own *de novo* review of the soundness of the IRS's decision to

17  withhold the documents under Exemption 3, nor do they afford Mr. Shannahan a meaningful

18  opportunity to contest the applicability of the exemption.

19       The Agents' Working Papers, for instance, consist of 5,280 pages of documents.

20  (Mahaney Decl. ¶ 17.)  Ms. Mahaney states that these documents "were prepared or gathered

21  by the revenue agents as part of his or her determination of the Cheungs' correct tax liability

22  and were largely obtained from information provided from the criminal investigation of the

23  Cheungs."  (*Id.*)  On this showing, the court has no ability to determine whether particular

24  documents qualify as return information.  The other categories contain fewer documents, but

25

ORDER – 13

present similar problems.  Even assuming the declarations present more information than those at issue in *Wiener*, as argued by the IRS, the court remains unconvinced that the IRS has met its burden under FOIA.  The Ninth Circuit requires an agency to provide either a *Vaughn* index or particularized declarations "to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest."  *Wiener*, 943 F.2d at 979.  The declarations submitted by the IRS do not satisfy this standard.  Therefore, the court declines to grant summary judgment pursuant to Exemption 3 and 26 U.S.C. § 6103(a).

**2.     Exemption 5**

Exemption 5 of FOIA provides that an agency may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption entitles an agency to withhold documents that a private party could not discover in litigation with the agency.  *Pac. Fisheries*, 539 F.3d at 1148.  "Specifically, it protects documents that would be covered by the attorney work-product privilege and the executive deliberative process privilege," *id.*, as well as the attorney-client privilege, *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

**i.     Deliberative Process Privilege**

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8 (2001).  The IRS argues that some documents[3] are exempt from

_____

[3] The IRS states that under Exemption 5 and the deliberative privilege process it is withholding Examination Workpapers pages 444-446, 449, 451, 641-42, 647-49, 654-660, 716-17, 720-23, 862-64, and 866-68; Agents' Working Papers pages 310-12a, 314-15, 318, 363-66, 370, 373-74, 376,

ORDER – 14

1    disclosure under Exemption 5 and the deliberative process privilege.  (Mot. at 20; Mahaney

2    Decl. ¶¶ 16(a), 17(a), 18(a), 19(a).)  In her declaration, Ms. Mahaney states that "certain" of

3    the documents are exempt "in whole or in part" under Exemption 5.  (Mahaney Decl. ¶¶

4    16(a), 17(a), 18(a), 19(a).)  To the extent that documents contain factual assertions that are

5    not exempt, the IRS asserts that they may be withheld under other exemptions.  (Mahaney

6    Decl. ¶¶ 16(a), 17(a), 18(a), 19(a).)  Mr. Shannahan responds that the IRS has neither

7    properly invoked the deliberative process privilege nor shown that the documents at issue are

8    of the type covered by the privilege.  (Resp. at 11.)

9         The court concludes that the IRS has not met its burden in demonstrating that

10   Exemption 5 and the deliberative process privilege apply to the documents in this case.  The

11   IRS asserts in a general manner that Exemption 5 applies to numerous documents, but makes

12   no attempt to provide the court with even a minimal description of particular documents.  The

13   IRS compounds this deficiency by claiming that these documents are exempt "in whole or in

14   part," without providing any segregation analysis because it believes other exemptions also

15   protect the factual assertions.

16        This showing is insufficient because neither the court nor Mr. Shannahan have any

17   way to evaluate meaningfully the scope of the deliberative process privilege as it applies to

18   these documents.  *See Wiener*, 943 F.2d at 977.  Furthermore, the IRS acknowledges that the

19   deliberative process privilege does not apply to these documents in full.  Instead of

20   identifying the portions of documents not covered by the privilege, however, the IRS seeks to

21

22   402-06, 408, 412-15, 417, 440, 469-85, 592, 644, 646, 651, 653, 661-93, 714-15, 719, 724, 727-47,
     776-77, 779, 786-87, 789, 793-94, 799-800, 802-03, 820-21, 823, 840-41, 847, 1182, 1389-1592,
23   1601-02, 1617-1620, 1654-59, 1661-76, 1760-67, 1775-1858, 1860-61, 1864-1943, 1945-47, 1949-
     1957, 1975-83, 1988-2074, 2085-2235, 2274-375, 2378-632, and 2647-58; Interview Notes, Third
24   Party Contacts, and Contact Sheets pages 330, 865, and 1760-61; and Internal Correspondence pages
     317, 319, 1710-1712, and 2376-77.  (Mot. at 20.)
25

1  avoid its burden under this exemption by reference to other exemptions.  This does not

2  demonstrate that the IRS has properly invoked Exemption 5 and the deliberative process

3  privilege.  If the IRS prevails on another exemption, then it prevails on that exemption, not

4  Exemption 5.  Therefore, because the IRS has failed to meet its burden as to Exemption 5 and

5  the deliberative process privilege, the court declines to grant summary judgment on those

6  grounds.

7                 **ii.**       **Attorney Work Product Privilege and Attorney-Client Privilege**

8         The attorney work product privilege protects the "mental processes of the attorney,"

9  *Klamath Water Users*, 532 U.S. at 8, while the attorney-client privilege protects

10  communications between an attorney and her client, *Upjohn Co. v. United States*, 449 U.S.

11  383, 389 (1981).  The IRS argues that Agents' Working Papers pages 331 to 347 are exempt

12  under Exemption 5 and the attorney work product privilege.  (Mot. at 22; Mahaney Decl. ¶

13  17(a).)  In her declaration, Ms. Mahaney also suggests that the documents are exempt under

14  the attorney-client privilege, although the IRS does not argue this in its motion.  (Mahaney

15  Decl. ¶ 17(a).)  Mr. Shannahan again objects that the IRS has not provided him with sufficient

16  information to evaluate the applicability of these privileges.  (Resp. at 13-14.)

17         The court concludes that the IRS has not met its burden in demonstrating that

18  Exemption 5 and either the work product privilege or the attorney-client privilege apply to

19  documents in this case.  The IRS provides only generalized information regarding the

20  withheld documents.  This is not sufficient.  Therefore, because the IRS has failed to meet its

21  burden as to Exemption 5 and either the attorney work product privilege or the attorney-

22  client privilege, the court declines to grant summary judgment on those grounds.

23

24

25

ORDER – 16

1

### 3.      Exemption 7

2      Exemption 7 of FOIA protects from disclosure "records or information compiled for

3   law enforcement purposes" but only to the extent that the agency justifies its decision to

4   withhold the documents by reference to one of six enumerated types of harm.  5 U.S.C. §

5   552(b)(7).  Judicial review of an Exemption 7 claim requires a two-part inquiry.  *Fed. Bureau*

6   *of Investigation v. Abramson*, 456 U.S. 615, 622 (1982).  First, the court must determine

7   whether the documents qualify as records or information compiled for law enforcement

8   purposes.  *Id.*  Second, the agency must show that disclosure would result in one of the six

9   types of harm.  *Id.*

10                   **i.      Documents Compiled for Law Enforcement Purposes**

11      The IRS constitutes a law enforcement agency within the meaning of Exemption 7.

12   *Church of Scientology Int'l v. U.S. Internal Revenue Serv.*, 995 F.2d 916, 919 (9th Cir. 1993);

13   *Lewis v. Internal Revenue Serv.*, 823 F.2d 375, 379 (9th Cir. 1987).  Documents compiled by

14   the IRS in the exercise of its law enforcement mandate qualify as documents compiled for law

15   enforcement purposes within the meaning of Exemption 7.  *See Lewis*, 823 F.2d at 379.  Both

16   criminal and civil enforcement activities of the IRS fall within the scope of Exemption 7.

17   *Church of Scientology Int'l*, 995 F.2d at 919; *see Ctr. for Nat'l Policy Review on Race &*

18   *Urban Issues v. Weinberger*, 502 F.2d 370, 373 (D.C. Cir. 1974).

19      Here, the declarations of Ms. Mahaney and Mr. White establish that all of the

20   documents responsive to the Cheung Request constitute "records or information compiled for

21   law enforcement purposes" under Exemption 7.  (Mahaney Decl. ¶¶ 16-20; White Decl. ¶¶

22   12-13.)  These documents were gathered or created for purposes of either the civil

23   examination or the criminal investigation.  The court thus concludes that the IRS has met its

24

25

ORDER – 17

1   burden in demonstrating that the records at issue were compiled for law enforcement

2   purposes.

3         ii.      **Exemption 7(A)**

4         Exemption 7(A) permits an agency to withhold law enforcement records that "could

5   reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

6   "The IRS need only make a general showing that disclosure of its investigatory records would

7   interfere with its enforcement proceedings."  *Lewis*, 823 F.2d at 380; *Barney v. Internal*

8   *Revenue Serv.*, 618 F.2d 1268, 1272-73 (8th Cir. 1980) ("Under exemption 7(A) the

9   government is not required to make a specific factual showing with respect to each withheld

10  document that disclosure would actually interfere with a particular enforcement proceeding").

11  Exemption 7(A) stands out from other FOIA exemptions because it depends on the general

12  category of the records as opposed to the individual subject matter of particular documents.

13  *Lewis*, 823 F.2d at 380.  Accordingly, a *Vaughn* index may be futile, and could "defeat the

14  purpose of Exemption 7(A)" by allowing the requesting party to discover the exact nature of

15  documents supporting the IRS's case earlier than he otherwise would or should.  *Id.*

16        The IRS argues that Exemption 7(A) applies to all of the documents due to the ongoing

17  criminal investigation of the Cheungs.  (Mot. at 15-16.)  In his declaration, Mr. White states

18  that release of the documents could (1) "allow the Cheungs to determine the nature, direction,

19  scope, and limits of the criminal proceedings, and the strategies and theories being utilized by

20  the government"; (2) "allow the Cheungs earlier and greater access to information about the

21  proceedings than they would otherwise be entitled to receive, and would deprive the

22  government of reciprocal discovery since the Cheungs are now unavailable"; (3) "enable the

23  Cheungs to craft explanations or defenses based upon the government's analysis, depriving

24  the government of the facts known to the Cheungs"; and (4) "enable the Cheungs to conceal

25

1    or disguise income, or take other steps to avoid having income attributed to them." (White

2    Decl. ¶ 16.)

3          Mr. Shannahan argues that the IRS has not demonstrated the harm contemplated by

4    Exemption 7(A). (Resp. at 14-15.) "The fact that a defendant in an ongoing criminal

5    proceeding might obtain documents through the FOIA that they could not otherwise get

6    through discovery, or prior to the point at which they would be entitled to get them through

7    discovery, does not constitute harm for the purpose of Exemption 7(A)." (*Id.* at 14.) Mr.

8    Shannahan believes that the declarations of Ms. Mahaney and Mr. White are too generalized,

9    and that the IRS has failed to show how the early release of documents, which he seeks in

10   connection with the civil enforcement proceeding, could impair the criminal proceedings. (*Id.*

11   at 15.) Additionally, Mr. Shannahan contends that "any potential interference with the

12   criminal proceedings in this case is completely of the Government's own doing" because the

13   IRS chose to initiate civil enforcement proceedings prior to resolution of the criminal case.

14   (*Id.* at 15-16.)

15         The court concludes that the potential harm alleged by the IRS is of the type that

16   "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. §

17   552(b)(7)(A). Mr. Shannahan relies primarily on *North v. Walsh*, 881 F.2d 1088 (D.C. Cir.

18   1989), in arguing that the IRS has not shown the harm contemplated by Exemption 7(A).

19   (Resp. at 14-15.) In essence, Mr. Shannahan argues that disclosure to the Cheungs of

20   documents, which otherwise either would not be available through discovery in the criminal

21   proceeding or would not be available at this stage, does not constitute harm under Exemption

22   7(A). (*Id.*) In *North*, the D.C. Circuit concluded that an agency had not met its burden under

23   Exemption 7(A) where it did not assert that disclosure could be expected to harm the

24   government's criminal case or impede its investigation, but rather claimed only that disclosure

25

ORDER – 19

would interfere with the discovery process as established by the district court.  *North*, 881

F.2d at 1098-99.  *North* is inapposite.  Although the IRS does assert that disclosure under

FOIA would allow "earlier and greater access to information about the proceedings than [the

Cheungs] would otherwise be entitled to receive," the IRS does not posit this concern as the

sole or ultimate harm at issue.  (White Decl. ¶ 16.)  Rather, the IRS believes that disclosure

will allow the Cheungs to use information contained in the documents as a means "to conceal

or disguise income, or take other steps to avoid having income attributed to them."  (*Id.*)  This

type of harm rises above mere interference with discovery procedures as in *North*.

Mr. Shannahan next argues that the IRS brought this harm on itself by commencing the

civil examination prior to the conclusion of the criminal proceedings.  (Resp. at 15.)  The

court finds this argument unpersuasive.  By declining to appear for their arraignment and

initial appearance in the criminal case, the Cheungs effectively stalled resolution of the

criminal proceedings.  Accordingly, the Cheungs's decision not to appear was a catalyst for

the IRS's decision to initiate the civil examination prior to the conclusion of the criminal

proceedings.

Despite these preliminary conclusions, the court finds that the IRS has not

demonstrated a sufficient connection between the withheld documents and the alleged harm

for purposes of Exemption 7(A).  Ninth Circuit precedent establishes that the IRS need not

provide a *Vaughn* index or other document-by-document showing of harm when withholding

documents under Exemption 7(A).  *Lewis*, 823 F.2d at 380.  "The IRS need only make a

general showing that disclosure of its investigatory records would interfere with its

enforcement proceedings."  *Id.*  This does not mean, however, that any generalized showing

will be sufficient.  An agency must identify sufficiently distinct categories of documents in

order to demonstrate how disclosure of that category of document would interfere with

ORDER – 20

enforcement proceedings.  *See Bevis v. Dep't of State*, 801 F.2d 1386, 1389-90 (D.C. Cir.
1986).  As discussed above, the declarations provided by the IRS are too broad and too
generalized to "afford the requester an opportunity to intelligently advocate release of the
withheld documents and to afford the court an opportunity to intelligently judge the contest."
*Wiener,* 943 F.2d at 979.  The court declines to grant summary judgment under Exemption
7(A).

### iii.    Exemption 7(C)

Exemption 7(C) permits an agency to withhold law enforcement records that "could
reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C.
§ 552(b)(7)(C).  To determine whether documents qualify for protection under Exemption
7(C), the court must balance the public interest in disclosure against the privacy interest in
nondisclosure.  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004).
The concept of personal privacy under Exemption 7(C) extends to information about "persons
interviewed as witnesses or initial suspects but whose link to the official inquiry may be the
result of mere happenstance."  *Id.* at 166.  If the privacy interests of third parties have been
established, then the burden shifts to the FOIA requester.  *Lane v. Dep't of the Interior*, 523
F.3d 1128, 1137 (9th Cir. 2008).  The requester must show (1) "that the public interest sought
to be advanced is a significant one, an interest more specific than having the information for
its own sake" and (2) that "the information is likely to advance that interest."  *Favish*, 541
U.S. at 172.

ORDER – 21

1    The IRS argues that some documents[4] are exempt under Exemption 7(C) because their

2    disclosure would reveal the identities of "any individual who may have decided to cooperate

3    in the investigation of the Cheungs, WCI, and WCIP." (Mot. at 17.) The documents

4    withheld under Exemption 7(C) were "obtained during the course of the Cheungs' criminal

5    investigation" and "reference third parties who were not the subject of either the criminal or

6    civil investigation." (Mahaney Decl. ¶¶ 16(e), 17(e), 18(e), 19(d).) The IRS believes that

7    disclosure "would compromise the privacy of innocent third party taxpayers," (*id*. ¶ 16(a)),

8    and could lead to "possible harassment or intimidation," (Mot. at 17). Mr. Shannahan does

9    not contest the validity of this privacy interest. (*See* Resp. at 16-17.)

10    The court concludes that the IRS has met its burden in demonstrating the existence of a

11    valid privacy interest. Individuals who cooperate with governmental investigations have an

12    interest in maintaining the privacy of their identities and the nature of their assistance to the

13    investigation. This privacy interest is not as acute as an individual's privacy interest in his or

14    her FBI rap sheet, *see Reporters Comm.*, 489 U.S. at 780, but it is nonetheless the type of

15    interest protected by Exemption 7(C). *See Favish*, 541 U.S. at 166. The IRS has thus met its

16    initial burden.

17    Next, the burden shifts to Mr. Shannahan to demonstrate a significant public interest in

18    support of his FOIA request and to show that the information requested is likely to advance

19    that interest. *Id.* at 172. Mr. Shannahan does not attempt to make this showing. (Resp. at 16-

20    17.) Instead, he argues only that the IRS has not indicated why redaction of identifying

21

22    _____

      [4] The IRS states that under Exemption 7(C) it is withholding Examination Workpapers pages
23    444, 445, 641, and 647-48; Agents' Working Papers pages 310, 314-15, 318, 455, 481-84, 550, 552,
      593, 602-40, 869, 1015-17, 1071-74, 1115-17, 1291, 1302-08, 1601-02, 1617-20, 1654, 1758-59,
24    1988-2040, 2085-2230, and 2753-5474; Interview Notes, Third Party Contacts, and Contact Sheets
      pages 330, 1593-1600, 1603-16, 1621-25, 1626-53, 1729-57, and 1760-61; and Internal
25    Correspondence page 317. (Mot. at 16-17.)

ORDER – 22

1    information is not possible or appropriate.  (*Id.*)  The question of segregation is distinct from

2    the question whether Exemption 7(C) applies.  Therefore, because Mr. Shannahan has

3    presented no argument with respect to the applicability of Exemption 7(C), the court

4    concludes that the IRS has carried its burden and demonstrated that Exemption 7(C) applies

5    to the documents withheld under this exemption.  As discussed below in Part II.E.5, however,

6    the court declines to grant summary judgment under Exemption 7(C) because the IRS has not

7    performed a segregation analysis with respect to these documents.

8         The IRS also asserts that Exemption 6 applies to the same documents allegedly

9    protected under Exemption 7(C).  (Mot. at 18 n.3.)  Exemption 6 protects from disclosure

10   "personnel and medical files and similar files the disclosure of which would constitute a

11   clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The IRS raises this

12   argument in a footnote and does not analyze how Exemption 6 applies to the facts of this

13   case.  The IRS believes that Exemption 7(C) and Exemption 6 protect the same documents for

14   essentially the same reasons.  (Mot. at 18 n.3.)  On this cursory showing, the court declines to

15   analyze the applicability of Exemption 6.

16        **vi.    Exemption 7(E)**

17        Exemption 7(E) permits an agency to withhold law enforcement records that "would

18   disclose techniques and procedures for law enforcement investigations or prosecutions, or

19   would disclose guidelines for law enforcement investigations or prosecutions if such

20   disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. §

21   552(b)(7)(E).  The government must show that the technique or procedure at issue is not well

22   known to the public, *see Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995),

23   and must describe the general nature of the technique or procedure at issue, although it need

24

25

1   not provide specific details, s*ee Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp.

2   2d 146, 181 (D.D.C. 2004).

3        The IRS argues that some documents[5] are exempt under Exemption 7(E) because they

4   "describe in detail the techniques and procedures undertaken by the agent to conduct this

5   particular investigation and also provide insight into the techniques and procedures

6   undertaken with respect to the ongoing criminal investigation."  (Mahaney Decl. ¶ 16(c).)

7   The IRS states that certain, unidentified pages of the withheld documents contain discriminant

8   function ("DIF") scores.  (Mot. at 19.)  "The DIF methodology is a mathematical

9   classification technique which the Service uses to help identify tax returns that have a high

10   probability of significant change in tax liability if audited.  Disclosure of DIF scores would

11   enable taxpayers to reduce their likelihood of being audited by the Service."  (*Id*.)  The IRS

12   does not describe any other techniques or procedures.  In response, Mr. Shannahan argues

13   that the IRS has provided only a cursory justification for withholding under Exemption 7(E).

14   (Resp. at 18.)

15        The court concludes that the IRS has not satisfied its burden in demonstrating that the

16   withheld documents are exempt under Exemption 7(E).  Ms. Mahaney provides little insight

17   as to the particular techniques or procedures at issue, and does not discuss whether the

18   techniques or procedures at issue are well known.  Although the DIF methodology may

19   constitute a technique or procedure within the scope of Exemption 7(E), the IRS does not

20   identify which documents include DIF scores or how disclosure of a DIF score would enable

21

22

_____

23       [5] The IRS states that under Exemption 7(E) it is withholding Examination Workpapers pages
302-06, 447-48, and 867-68; Agents' Working Papers pages 320-29 and 753-74; and Interview
24   Notes, Third Party Contacts, and Contact Sheets pages 330, 865, 1593-1600, 1603-16, 1621-53,
1729-57, and 1760-61.  (Mot. at 18.)
25

ORDER – 24

1    taxpayers to reduce their likelihood of being audited.  The court therefore declines to grant

2    summary judgment under Exemption 7(E).

3          **4.      Electronic Database**

4          The IRS argues that the electronic database is exempt from disclosure pursuant to

5    Exemptions 3, 7(A), and 7(E).  (Mahaney Decl. ¶ 20; White Decl. ¶ 15.)  For the reasons

6    discussed above, the court declines to grant summary judgment on these grounds.  The IRS

7    has failed to present sufficient information to meet its burdens under these exemptions.

8          **5.      Segregation Analysis**

9          FOIA requires an agency to provide any reasonably segregable portion of a record that

10   is exempt from disclosure.  5 U.S.C. § 552(b).  "The burden is on the agency to establish that

11   all reasonably segregable portions of a document have been segregated and disclosed."  *Pac.*

12   *Fisheries*, 539 F.3d at 1148.  The IRS concedes that it has not performed a segregation

13   analysis.  (Reply at 5.)  The IRS anticipated that any segregation analysis would be

14   unnecessary.  Here, having concluded that the IRS only met its burden under Exemption 7(C)

15   and because the IRS has presented no segregation analysis with respect to the documents

16   withheld under that exemption, the court declines to grant summary judgment with respect to

17   the documents withheld under Exemption 7(C).

18   **F.    *Vaughn* Index**

19         Having reviewed the papers submitted by the parties and heard the oral argument of

20   counsel, the court directs the clerk to re-note the motion for summary judgment (Dkt. # 22)

21   for consideration for July 17, 2009.  The court directs the IRS to file a *Vaughn* index to

22   address the court's concerns as identified in this order.  "A *Vaughn* Index must: (1) identify

23   each document withheld; (2) state the statutory exemption claimed; and (3) explain how

24   disclosure would damage the interests protected by the claimed exemption."  *Citizens*

25

*Comm'n on Human Rights*, 45 F.3d at 1326 n.1.  The *Vaughn* index should sufficiently identify individual documents being withheld so that the court and Mr. Shannahan can evaluate the applicability of the claimed exemptions.  A *Vaughn* index based upon a representative sampling of the withheld documents is appropriate in this case due to the large number of documents at issue.  *See Neely v. Fed. Bureau of Investigation*, 208 F.3d 461, 467 (4th Cir. 2000).  The representative sampling should include documents from each of the five categories and must cover at least 500 pages of documents.[6]

The court rejects the IRS's invitation to review the *Vaughn* index in camera.  (*See* Reply at 4 n.3.)  The IRS has not shown that allowing Mr. Shannahan access to an appropriate *Vaughn* index will cause the types of harm sought to be avoided by the FOIA exemptions.  Furthermore, requiring an agency to provide a *Vaughn* index is designed "to afford the requester an opportunity to intelligently advocate release of the withheld documents . . . ."  *Wiener*, 943 F.2d at 979.  Without access to the *Vaughn* index, Mr. Shannahan would not be able to advocate for the release of the withheld documents in a meaningful and particularized manner.  Such advocacy holds the IRS to its burdens and focuses the issues for decision-making by the court.  The court notes, however, that the IRS need not provide such detailed information in the *Vaughn* index as to defeat the purposes of the FOIA exemptions.  Rather, the IRS must use its best judgment in determining the appropriate amount of detail to include in the *Vaughn* index.

The IRS shall file a *Vaughn* index by June 26, 2009.  Mr. Shannahan may file a response not to exceed 15 pages on or before July 10, 2009.  The IRS may file a reply not to exceed 10 pages on or before July 17, 2009.

---

[6] The court is mindful that some of the withheld documents may individually span a wide range of pages.  The IRS may not satisfy this court's order by providing a *Vaughn* index that includes only a small handful of individual documents.

ORDER – 26

1

**G.      Fugitive Disentitlement Doctrine**

2      The fugitive disentitlement doctrine provides that "one who has removed himself from

3 the jurisdiction of the courts has no claim upon them for an order which would require the

4 delivery of the files of the United States government to his hiding place." *Doyle v. U.S. Dep't*

5 *of Justice*, 494 F. Supp. 842, 845 (D.D.C. 1980).  The Supreme Court cautions against the

6 "harsh sanction" of disentitlement, and encourages courts to use the doctrine only as a last

7 resort.  *See Degen v. United States*, 517 U.S. 820, 827-29 (1996).  Here, the court declines to

8 dismiss Mr. Shannahan's FOIA case under the fugitive disentitlement doctrine at this time.

9 This is a drastic sanction, and one the court will not consider until after having reviewed the

10 IRS's *Vaughn* index and the supplemental filings, as discussed above.

### III.    CONCLUSION

12      For the foregoing reasons, the court directs the parties to proceed as described above

13 and directs the clerk to re-note the IRS's motion for summary judgment (Dkt. # 22) for

14 consideration for July 17, 2009.

15      Dated this 27th day of April, 2009.

16

17

18

_____
JAMES L. ROBART
United States District Judge

19

20

21

22

23

24

25

ORDER – 27