UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM P. SHANNAHAN,

　　　　　　　Plaintiff,

　　v.

INTERNAL REVENUE SERVICE,

　　　　　　　Defendants.

CASE NO. C08-560JLR

ORDER

## I.　INTRODUCTION

This matter comes before the court for a second time on Defendant Internal Revenue Service's ("IRS") motion for summary judgment (Dkt. # 22).  This court previously determined that the IRS had not met its burden in withholding documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and directed the IRS to file a *Vaughn* index of a representative sample of the withheld documents.  (*See* Order of April 27, 2009 ("Order") (Dkt. # 32) at 25-26.)  Having reviewed the motion, as well as all papers filed in support and opposition, the *Vaughn* index, all supplemental filings,

and the balance of the record, and deeming oral argument unnecessary, the court GRANTS in part, DENIES in part, and RESERVES ruling in part on the IRS's motion for summary judgment.  The court RE-NOTES the motion for consideration on November 23, 2009, and DIRECTS the parties to proceed as discussed in Parts III.E and III.F.

## II.    BACKGROUND

This is a dispute under FOIA.  It arises against the backdrop of civil enforcement and criminal proceedings against Steven N.S. Cheung and Linda Su, a.k.a. Linda Cheung ("the Cheungs"), in connection with their alleged failure to report taxable income generated by West Coast International Limited ("WCI") and West Coast International (Parking) Limited ("WCIP") (collectively, "the Entities").  William Shannahan, counsel for both the Cheungs and the Entities, filed this FOIA case on behalf of the Cheungs. Because the parties are familiar with the factual and procedural background of this matter, the court incorporates by reference the background section of its previous order. (*See* Order at 1-7.)

The court previously declined to grant the IRS's motion for summary judgment. On April 27, 2009, after reviewing the motion and having heard argument, the court directed the IRS to file a *Vaughn* index[1] to provide the court and Mr. Shannahan with

---

[1] The "*Vaughn* index" takes its name from the District of Columbia Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  *See also Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1227 n.1 (9th Cir. 1991).  In *Vaughn*, the D.C. Circuit rejected an agency's conclusory affidavit and required the agency to provide detailed support for its claimed FOIA

additional information upon which to evaluate the claimed exemptions.  (Order at 25-26.)  The IRS timely filed its *Vaughn* index (*see* Second Declaration of Meghan M. Mahaney ("Sec. Mahaney Decl.") (Dkt. # 36)), Mr. Shannahan filed a supplemental response (Resp. II (Dkt. # 37)), and the IRS filed a supplemental reply (Reply II (Dkt. # 40)).

### III.   ANALYSIS

**A.   Preliminary Matters**

    1.   <u>Sufficiency of the *Vaughn* Index</u>

The court directed the IRS to file a *Vaughn* index based on a representative sample of the withheld documents.  (Order at 26.)  The court specified that the representative sample should include documents from each of the five categories, *i.e.*, Examination Workpapers, Agents' Working Papers, Interview Notes, Internal Correspondence, and the Electronic Database (*see* Order at 5-6), and cover at least 500 pages of documents.  (Order at 26.)  The *Vaughn* index includes 24 sections describing individual documents and the rationales in support of withholding.  In preparing the *Vaughn* index, the IRS determined that 24 pages of formerly withheld documents could be released subject to redaction.  (Sec. Mahaney Decl. at 2.)

---

exemptions.  *Vaughn*, 484 F.2d at 826-28.  Under Ninth Circuit precedent, "[a] *Vaughn* Index must: (1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1326 n. 1 (9th Cir. 1995).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Mr. Shannahan argues that the IRS has not complied with the court's instructions regarding the *Vaughn* index.  (Resp. II at 2-4.)  He objects to the IRS's decision to disclose additional documents at this time, argues that the *Vaughn* index is not user-friendly and does not cover a sufficient number of documents, and contends that the IRS has not demonstrated that the sample is actually representative.  (*Id*.)  The court dismisses Mr. Shannahan's first two objections to the *Vaughn* index, but sustains his third objection.

As to the first objection, the court is satisfied that the IRS's decision to disclose additional documents, without more, does not vitiate its claimed exemptions.  The IRS has not conceded that these documents cannot be withheld, but rather made a discretionary decision to release them.  (Reply II at 2.)  Likewise, Mr. Shannahan's second objection is also unfounded.  The *Vaughn* index is sufficiently user-friendly for present purposes and includes a sufficient number of documents.  As to the third objection, however, the court agrees that the IRS has not identified how it selected the documents described in the *Vaughn* index.  Although the sample represents a roughly proportionate selection from each of the categories (*see* Reply II at 2), Ms. Mahaney does not identify what method she used to select documents.  The IRS does not address this issue in its supplemental reply.  On this showing, the court cannot evaluate whether the *Vaughn* index constitutes a representative sample of the withheld documents.  Therefore, as discussed in Part III.E., the court directs the IRS to provide supplemental

information addressing this issue and describing how it selected the documents discussed in the *Vaughn* index.

     2.   Motion to Strike

The IRS also requests that the court strike the second declaration of David J. Lenci on the ground that it falls outside the scope of the supplemental response contemplated by the court's order.  (Reply II at 1 n.1.)  In his declaration, Mr. Lenci discusses the ways in which discovery is necessary so as to supplement the information in the *Vaughn* index.  The court is satisfied that Mr. Lenci's declaration is reasonably appropriate as it focuses on the sufficiency of the *Vaughn* index.  The court denies the IRS's motion to strike.

**B.   Legal Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Los Angeles Times Commc'ns, LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006). The court conducts a *de novo* review of an agency's response to a FOIA request. 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989). The usual summary judgment standard does not extend to FOIA cases because the facts are rarely in dispute and courts generally need not resolve whether there is a genuine issue of material fact. *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 800 (9th Cir. 1996). Courts instead follow a two-step inquiry when presented with a motion for summary judgment in a FOIA case. *Los Angeles Times*, 442 F. Supp. 2d at 893.

First, courts must evaluate "whether the agency has met its burden of proving that it fully discharged its obligations under the FOIA." *Id.* The agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents. *Zemansky v. U.S. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985). Second, if the agency satisfies its initial burden, the court must determine "whether the agency has proven that the information that it did not disclose falls within one of the nine FOIA exemptions." *Los Angeles Times*, 442 F. Supp. 2d at 894. In meeting its burden, "the government may not rely upon 'conclusory and generalized allegations of exemptions.'" *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980) (quoting *Vaughn*, 484 F.2d at 826).

ORDER - 6

**C.    FOIA Exemptions**

The IRS argues that the withheld documents are exempt from disclosure under FOIA Exemptions 3, 5, 6, 7(A), 7(C), and 7(E).  (Mot. at 9-22; Reply II at 4-10.)  Mr. Shannahan contends that the IRS has failed to present sufficient information to justify withholding under these exemptions.  Having previously determined that the IRS conducted an adequate search (Order at 10), the court begins its present inquiry with the second step of the analysis: has the IRS established that the withheld documents fall within one or more of the claimed FOIA exemptions?

1.    Exemption 3 and 26 U.S.C. § 6103

Exemption 3 of FOIA incorporates nondisclosure protections established in other federal statutes.  5 U.S.C. § 552(b)(3).  26 U.S.C. § 6103(a) prohibits the disclosure of returns or return information and qualifies as a statute that exempts disclosure within the meaning of Exemption 3.  *Kamman v. U.S. Internal Revenue Serv.*, 56 F.3d 46, 48 (9th Cir. 1995); *Johnson v. Comm'r*, 239 F. Supp. 2d 1125, 1137 (W.D. Wash. 2002).  Section 6103(a) provides that "[r]eturns and return information shall be confidential," and generally prohibits the government from disclosing returns and return information.  26 U.S.C. § 6103(a).  The statute defines "return information" to include:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the

existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense. . . .

26 U.S.C. § 6103(b)(2)(A).  Despite the general rule, the IRS may disclose return information to a taxpayer so long as "the Secretary determines that such disclosure would not seriously impair Federal tax administration."  26 U.S.C. § 6103(e)(7).

### i.      Return Information

The *Vaughn* index establishes that the withheld documents include "return information" under 26 U.S.C. § 6103(b)(2).  Ms. Mahaney describes the nature of each document and explains why the information in the document constitutes return information.[2]  Mr. Shannahan does not dispute that the withheld documents include return information.  Having reviewed the *Vaughn* index, the court is satisfied that the IRS has demonstrated that the withheld documents include return information.

### ii.      Serious Impairment of Federal Tax Administration

A district court reviews *de novo* the IRS's determination that the release of withheld documents would seriously impair Federal tax administration.  *Long v. U.S. Internal Revenue Serv.*, 742 F.2d 1173, 1182-83 (9th Cir. 1984); *Pac. Fisheries, Inc. v.*

---

[2] For instance, Ms. Mahaney states that the information contained in Agents' Working Papers pages 1022 to 1047 "is return information because the information sets forth accounting information used during the criminal and civil examinations to determine the proper tax liability of the Cheungs."  (Sec. Mahaney Decl. at 15.)  Similarly, with respect to Examination Workpapers pages 449 to 452, Ms. Mahaney states that the information "is return information in that it was collected and prepared by the [IRS] to reflect transactions and other facts upon which the Cheung[s'] potential tax liability is based."  (Sec. Mahaney Decl. at 3.)  These examples are typical of the *Vaughn* index.

ORDER - 8

*Internal Revenue Serv.*, No.C04-2436JLR, 2009 WL 1249296, at *3 (W.D. Wash. May 6, 2009).   The IRS bears the burden on this issue.   *Long*, 742 F.2d at 1183.   Although the IRS's determination is entitled to deference, the court nonetheless reviews the determination *de novo* and "must satisfy itself, on the basis of detailed and nonconclusory affidavits, that the Commissioner is correct in his belief that the disclosure of [the information requested] by [the plaintiff] would pose a substantial risk of impairing the collection, assessment, or enforcement of the tax laws."   *Long*, 742 F.2d at 1183.   Federal tax administration, as defined at 26 U.S.C. § 6103(b)(4), "embraces assessment, collection, enforcement and litigation under laws governing the application of the internal revenue laws," *United States v. Hobbs*, 991 F.2d 569, 573 (9th Cir. 1993), and "unquestionably includes the criminal enforcement of the internal revenue laws," *Youngblood v. Comm'r*, No. 2:99-CV-9253-R(RNBX), 2000 WL 852449, at *9 (C.D. Cal. Mar. 6, 2000).

The IRS argues that all of the documents may be withheld pursuant to Exemption 3 because their disclosure would seriously impair federal tax administration. (Declaration of Megan M. Mahaney ("Mahaney Decl.") (Dkt. # 22-3) ¶¶ 16(d), 17(d), 18(d), 19(c), 20(c); Declaration of Cesar White ("White Decl.") (Dkt. # 22-4) ¶¶ 14-15.) Agent White asserts that release of the documents would or could (1) "allow the Cheungs to determine the nature, direction, scope, and limits of the criminal proceedings, and the strategies and theories being utilized by the government"; (2) "allow the Cheungs earlier and greater access to information about the proceedings than

they would otherwise be entitled to receive, and would deprive the government of

reciprocal discovery since the Cheungs are now unavailable"; (3) "enable the Cheungs

to craft explanations or defenses based upon the government's analysis, depriving the

government of the facts known to the Cheungs"; and (4) "enable the Cheungs to conceal

or disguise income, or take other steps to avoid having income attributed to them."

(White Decl. ¶ 15.)  In response, Mr. Shannahan does not dispute that the types of harm

alleged by the IRS would constitute serious impairment of federal tax administration.

Rather, he argues that the IRS has not demonstrated a rational connection between

release of the documents and the alleged harms.  (Resp. II at 8-12.)

a.  Insight into the Criminal Investigation

In the *Vaughn* index, Ms. Mahaney repeatedly asserts that the release of the

withheld documents would substantially interfere with federal tax administration

because it would allow the Cheungs greater insight into the scope of the criminal

investigation than they would otherwise be entitled.  (*See* Sec. Mahaney Decl. at 3-4, 6,

8-9, 11-12, 14-16, 18-19, 21-22, 24-29, 31-33, 35, 36, 38.)  This type of harm can give

rise to serious impairment of federal tax administration.  *See Cal-Trim, Inc. v. Internal

Revenue Serv.*, 484 F. Supp. 2d 1021, 1027-28 (D. Ariz. 2007); *George v. Internal

Revenue Serv.*, No. C05-0955 MJJ, 2007 WL 1450309, at * 8 (N.D. Cal. May 14, 2007);

*Youngblood*, 2000 WL 852449, at * 9.  In and of itself, however, this is a boilerplate

rationale that offers no particularized support for withholding.  The bare fact that the

Cheungs would otherwise not be entitled to information concerning the criminal

investigation does not mean that the release of certain documents would necessarily rise to the level of substantial interference with federal tax administration.

Having reviewed the *Vaughn* index, the court concludes that the IRS has met its burden under Exemption 3 and 26 U.S.C. § 6103 on this rationale with respect to documents prepared by the IRS and other governmental agencies, but not with respect to documents prepared by third-parties.  First, the release of government-prepared documents would expose the internal workings of the criminal investigation, including its scope, focus, and strengths and weaknesses, thereby offering a depth of insight into the investigation that otherwise would not be available to the Cheungs and that poses a strong likelihood of substantially interfering with federal tax administration.  Even assuming the Cheungs know or have access to some of the factual information in government-prepared documents, as argued by Mr. Shannahan, it does not follow that the Cheungs know the precise contours of the government's knowledge or the ways in which it used or is using the factual information.  Further, Agent White's determination that the release of these documents could enable the Cheungs to craft explanations or defenses or to conceal or disguise income is entitled to some deference.  *Long*, 742 F.2d at 1182-83.  The court is satisfied that Agent White is correct in his belief that the disclosure of these withheld documents "would pose a substantial risk of impairing the collection, assessment, or enforcement of the tax laws."  *Id.*  Therefore, the court concludes that the IRS has met its burden in establishing that Exemption 3, in connection with 26 U.S.C. § 6103, applies on this rationale with respect to Examination

ORDER - 11

Workpapers pages 449 to 452, and 866 to 868, Agents' Working Papers pages 727 to 747, 753 to 754, 870 to 871, 1654 to 1659, 1661 to 1675, 1713 to 1720, 1768 to 1774, 1776 to 1843, 1939 to 1943, 1988 to 2040, 2085 to 2208, and 2210 to 2230, Interview Notes pages 1626 to 1642, and Internal Correspondence pages 1711 to 1712.

Second, by contrast, the IRS has not established that the release of documents gathered by the government but prepared by Fok & Chan or other third-parties is likely to cause substantial interference with federal tax administration.  These documents are financial documents, such as balance sheets and profit and loss statements, pertaining to the Entities.  This information appears likely to be generally known by the Entities and the Cheungs, regardless whether they have actual possession of the documents, because these are documents that presumably would have been provided to the Entities.  For example, four of the documents described in the *Vaughn* index were prepared by Fok & Chan, a Hong Kong public accountant that Mr. Shannahan asserts is WCI's agent. (Resp. II at 10.)  Although the release of these documents may interfere with the criminal investigation, it is difficult to discern how the interference would be substantial when the Cheungs likely already have general knowledge of this financial information and know that the IRS relied on these documents.  *Cf. Grasso v. Internal Revenue Serv.*, 785 F.2d 70, 77 (3d Cir. 1986); *Campbell v. Dep't of Health and Human Servs.*, 682 F.2d 256, 260 (D.C. Cir. 1982).

The court is not persuaded by the IRS's argument that Mr. Shannahan has not presented evidence showing that this information is already known to the Entities and

the Cheungs.  (Reply II at 5.)  Rather, the *Vaughn* index itself raises questions about Fok & Chan's relationship to the Entities and the Cheungs that the IRS does not answer.  Mr. Shannahan's failure to present evidence of Fok & Chan's relationship to the Entities does not relieve the IRS of its burden to show that these documents are properly withheld.[3]  On the present record, the court concludes that the IRS has not met its burden in establishing that Exemption 3, in connection with 26 U.S.C. § 6103, applies on this rationale with respect to Agents' Working Papers pages 518 to 535, 604 to 640[4], 1022 to 1069[5], 1176 to 1181[6], and 2671 to 2706[7], and the Electronic Database.[8]

---

[3]  To the extent the IRS provides the court with additional information about these withheld documents, Mr. Shannahan's failure to provide any evidence regarding information in the possession of or known to the Entities and the Cheungs may prove of greater consequence.

[4]  Agents' Working Papers pages 604 to 640 consist of "a chart with figures followed by receipts detailing the cash transactions undertaken by Mr. Cheung for the years at issue in the criminal and civil cases."  (Sec. Mahaney Decl. at 8.)  Ms. Mahaney explains that these pages "consist of information obtained from third parties."  (Sec. Mahaney Decl. at 10.)  It is not clear whether the IRS prepared any portions of these documents.

[5]  Agents' Working Papers pages 1048 to 1069 are "[t]wenty-two pages of documents obtained by the Service detailing land assignments, deeds, land registries and corporate registrations undertaken on behalf of Stephen Cheung and/or the Entities."  (Sec. Mahaney Decl. at 16.)  Ms. Mahaney does not indicate which third-party prepared these documents.  It is not clear whether these documents or the information contained therein is generally known to the Entities and the Cheungs.

[6]  Agents' Working Papers pages 1176 to 1181 are "[f]ive pages of profit tax assessments bills and corporate information pertaining to WCI from Hong Kong."  (Sec. Mahaney Decl. at 17.)  This information, although not prepared by Fok & Chan, also appears to be the type of information generally known to the Entities and the Cheungs.

[7]  Agents' Working Papers pages 2671 to 2706 are described as "[a] 36 page chart *obtained* during the course of the criminal investigation and undated, listing checks over $1,000,000 pertaining to WCIP as well as the dates of the checks and check numbers."  (Sec. Mahaney Decl. at 33 (emphasis added).)  These documents appear to be from an unidentified

b.      Revealing the Source of Information

Ms. Mahaney also contends that the release of certain documents created by third-parties or unidentified parties would substantially interfere with federal tax administration by indicating the source of financial information.  (*See* Sec. Mahaney Decl. at 8, 18.)  This argument is not explained in depth with respect to Exemption 3.  It appears, however, that the IRS believes disclosure would reveal the identity of individuals cooperating in the criminal investigation and thereby chill future cooperation.  This type of harm might rise to the level of substantial interference with federal tax administration.  The IRS, however, has not identified why the release of these documents would reveal their source, nor explained why revealing the source would actually be harmful.  On the present record, the court finds that the IRS has not provided sufficient information to afford Mr. Shannahan an opportunity to intelligently advocate for the release of these documents and to afford the court an opportunity to intelligently judge the contest.  *See Wiener v. Fed. Bureau of Investigation*, 943 F.2d 972, 979 (9th Cir. 1991).

---

third-party source.  It is not clear whether this is information that may be generally known to the Entities and the Cheungs.

[8]  The Electronic Database contains information that was "prepared or gathered by the IRS."  (Sec. Mahaney Decl. at 37.)  Although Exemption 3 and 26 U.S.C. § 6103 may apply to some files in the Electronic Database, the IRS has not provided the court with adequate information upon which to identify potentially exempt files.

2.   Exemption 7

Exemption 7 of FOIA protects from disclosure "records or information compiled for law enforcement purposes" to the extent that the agency justifies its decision to withhold the documents by reference to one of six enumerated types of harm.  5 U.S.C. § 552(b)(7).  Judicial review of an Exemption 7 claim requires a two-part inquiry.  *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982).  First, the court must determine whether the documents qualify as records or information compiled for law enforcement purposes.  *Id.*  Second, the agency must show that disclosure would result in one of the six types of harm.  *Id.*

In its previous order, the court determined that the withheld documents constitute records or information compiled for law enforcement purposes.  (Order at 17-18.)  The court also concluded that the IRS had met its burden under Exemption 7(C), but declined to grant summary judgment with respect to documents withheld under this exemption because the IRS had not performed a segregation analysis.  (Order at 21-23.)  The court therefore addresses the applicability of Exemptions 7(A) and 7(E).

   i.   *Exemption 7(A)*

Exemption 7(A) permits an agency to withhold law enforcement records that "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  "The IRS need only make a general showing that disclosure of its investigatory records would interfere with its enforcement proceedings."  *Lewis v. Internal Revenue Serv.*, 823 F.2d 375, 380 (9th Cir. 1987); *Barney v. Internal Revenue*

*Serv.*, 618 F.2d 1268, 1272-73 (8th Cir. 1980).  In order to withhold documents under Exemption 7(A), the agency "must establish that it is a law enforcement agency, that the withheld documents were investigatory records compiled for law enforcement purposes, and that disclosure of those documents would interfere with pending enforcement proceedings."  *See Lion Raisins v. U.S. Dep't of Agriculture*, 354 F.3d 1072, 1082 (9th Cir. 2004) (quoting *Lewis*, 823 F.2d at 379).[9]

The IRS has met its burden under Exemption 7(A) with respect to documents prepared by the IRS and other governmental agencies but not with respect to documents prepared by Fok & Chan and other third-parties.  First, the IRS is a law enforcement agency for purposes of Exemption 7(A).  *See Church of Scientology Int'l v. U.S. Internal Revenue Serv.*, 995 F.2d 916, 919 (9th Cir. 1993); *Lewis*, 823 F.2d at 379.  Second, the court has previously concluded that the withheld documents constitute investigatory records compiled for law enforcement purposes.  (Order at 17-18.)

Third, the IRS has demonstrated that disclosure of some but not all of the withheld documents would interfere with the pending enforcement proceedings.  The court's reasoning with respect to Exemption 3 and 26 U.S.C. § 6103 applies with equal

_____

[9] In 1986, Congress lowered the agency's burden in showing harm from a demonstration that the release "would interfere with" to "could reasonably be expected to interfere with" enforcement proceedings.  Other circuits have generally interpreted this change to broaden the protection of Exemption 7(A).  *See Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1164 n.5 (3d Cir. 1995).  In *Lion Raisins*, the Ninth Circuit quoted *Lewis* in articulating the applicable standard under Exemption 7(A).  *Lion Raisins*, 354 F.3d at 1082.  The *Lewis* court, however, applied the former version of Exemption 7(A), *Lewis*, 823 F.2d at 379, while the *Lion Raisins* court applied the current version, *Lion Raisins*, 354 F.3d at 1082.  Although the *Lion Raisins* court did not expressly address the 1986 amendment, the Ninth Circuit's decision confirms that the Exemption 7(A) standard remains unaltered from *Lewis*.

force here.  In essence, while the IRS has established a rational link between the release

of government-prepared documents and interference with enforcement proceedings, it

has not identified such a connection with respect to documents prepared by third-parties.

On the present record, the IRS has not shown how the release of financial documents

prepared by Fok & Chan and others would interfere with enforcement proceedings.  This

does not mean that the release of documents prepared by third-parties and subsequently

gathered by the IRS would not interfere with enforcement proceedings.  Rather, it means

that the IRS has not explained in detail how releasing documents prepared by third-

parties would interfere with the government's criminal investigation.  *See Lion Raisins*,

354 F.3d at 1084; *Grasso*, 785 F.2d 70, 77; *Campbell*, 682 F.2d at 260.  In sum, the

court finds that the IRS has met its burden in demonstrating that Exemption 7(A) applies

with respect to with respect to Examination Workpapers pages 449 to 452, and 866 to

868, Agents' Working Papers pages 727 to 747, 753 to 754, 870 to 871, 1654 to 1659,

1661 to 1675, 1713 to 1720, 1768 to 1774, 1776 to 1843, 1939 to 1943, 1988 to 2040,

2085 to 2208, and 2210 to 2230, Interview Notes pages 1626 to 1642, and Internal

Correspondence pages 1711 to 1712, but has not met its burden under Exemption 7(A)

with respect to Agents' Working Papers pages 518 to 535, 604 to 640, 1022 to 1069,

1176 to 1181, and 2671 to 2706, and the Electronic Database.

   ii.  *Exemption 7(E)*

   Exemption 7(E) permits an agency to withhold law enforcement records that

"would disclose techniques and procedures for law enforcement investigations or

prosecutions, or would disclose guidelines for law enforcement investigations or

prosecutions if such disclosure could reasonably be expected to risk circumvention of

the law." 5 U.S.C. § 552(b)(7)(E). The government must show that the technique or

procedure at issue is not well known to the public, s*ee Rosenfeld v. U.S. Dep't of Justice*,

57 F.3d 803, 815 (9th Cir. 1995), and must describe the general nature of the technique

or procedure at issue, although it need not provide specific details, s*ee Judicial Watch,

Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004).

The court concludes that the IRS has met its burden in establishing that

Exemption 7(E) applies to Agents' Working Papers pages 753 to 754. In the *Vaughn*

index, Ms. Mahaney explains in depth how the IRS uses discriminant function system

("DIF") scores. (Sec. Mahaney Decl. at 12-13.) "DIF scores are compiled for the

purpose of enforcing the Internal Revenue laws and, should the DIF core system be

compromised, the IRS would have difficulty in efficiently allocating examination

resources." (Sec. Mahaney Decl. at 13.) The *Vaughn* index demonstrates that the DIF

score system is a technique or procedure not well known to the public and sufficiently

describes the general nature of the DIF score system. The IRS has met its burden under

Exemption 7(E) with respect to these documents.

By contrast, the court denies summary judgment under Exemption 7(E) with

respect to Examination Workpapers pages 867 to 868 because the IRS has provided only

boilerplate rationales in support of withholding. (*See* Sec. Mahaney Decl. at 6.) The

court previously determined that the IRS had provided no insight into the particular

techniques or procedures at issue, nor offered any discussion regarding whether the

techniques or procedures are well known.  (Order at 25-26.)  The IRS not remedied these

deficiencies with respect to Examination Workpapers pages 867 to 868.  In its *Vaughn*

index, the IRS asserts that these documents are withheld pursuant to Exemption 7(E) for

the following reasons:

> The Service is withholding pages 867-868 because the information in these pages detail the techniques and procedure undertaken by the agent to conduct this particular investigation with respect to the charge of . . . fraud against the Cheungs; its disclosure would also provide insight into the techniques and procedures undertaken with respect to the ongoing criminal investigation, since the revenue agent obtained her information from the criminal investigation.

(Sec. Mahaney Decl. at 6.)  The *Vaughn* index adds no substantive information to the

IRS's original showing.  The court finds that the IRS has not satisfied its burden in

demonstrating that these withheld documents are exempt under Exemption 7(E).  The

court denies summary judgment under Exemption 7(E) with respect to Examination

Workpapers pages 867 to 868.

    3.   Exemption 6

      Exemption 6 protects from disclosure "personnel and medical files and similar

files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy."  5 U.S.C. § 552(b)(6).  "A 'similar' file is defined simply as a file which

contains information similar to that found in a standard personnel file."  *Church of

Scientology of Cal.*, 611 F.2d at 746.  The court previously declined to consider the

applicability of Exemption 6 because the IRS raised this argument in a footnote and did

not analyze how the exemption applied to the facts of this case.  (Order at 23.)

The court denies summary judgment under Exemption 6 because the IRS has not

established that the documents contain a sufficient amount of personal information to

merit protection under Exemption 6.  *See Church of Scientology of Cal.*, 611 F.2d at

747.  The IRS concedes that the withheld documents are not personnel or medical files,

but argues that they may be withheld as "similar files."  (Reply at 7.)  In its *Vaughn*

index, however, the IRS fails to provide any description of the specific personal

information at issue in the files.  Without this type of particularized information, the

court has no method by which to evaluate whether these documents constitute similar

files under Exemption 6.  Therefore, the court denies summary judgment under

Exemption 6.

4.   Exemption 5

Exemption 5 of FOIA provides that an agency may withhold "inter-agency or

intra-agency memorandums or letters which would not be available by law to a party

other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This

exemption entitles an agency to withhold documents that a private party could not

discover in litigation with the agency.  *Pac. Fisheries*, 539 F.3d at 1148.  "Specifically,

it protects documents that would be covered by the attorney work-product privilege and

the executive deliberative process privilege," *id.*, as well as the attorney-client privilege,

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

i.      *Deliberative Process Privilege*

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8 (2001). "To fall within the 'deliberative process' privilege of exemption 5, the materials in question must be 'predecisional' in nature and must also form part of the agency's "deliberative process." *See Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1093 (9th Cir. 1997).

> A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." A predecisional document is part of the "deliberative process," if "the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."

*Id.* (quoting *Assembly of State of Cal. v. U.S. Dep't. of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)). "Factual portions of documents covered by the deliberative process privilege must be segregated and disclosed unless they are 'so interwoven with the deliberative material that [they are] not [segregable].'" *Pac. Fisheries*, 539 F.3d at 1148 (quoting *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000)).

The court concludes that the IRS has met its burden in demonstrating that Exemption 5 and the deliberative process privilege apply in full or in part to Examination Workpapers 449 to 452 (full) and 866 to 868 (full), Agents' Working

ORDER - 21

Papers pages 526[10] (part), 531 (part), 534 (part), 727 to 747 (full), 1654 to 1659 (full), 1661 to 1675 (full), 1776 to 1843 (full), 1939 to 1943 (full), 1988 to 2040 (full), 2085 to 2208 (full), 2210 to 2230 (full), and Internal Correspondence pages 1711 to 1712 (full).[11]  In the *Vaughn* index, Ms. Mahaney explains that these documents were prepared by IRS personnel as part of the pre-decisional process connected to the investigations.  These documents include, for example, handwritten notes and draft calculations.  Having reviewed the *Vaughn* index, the court finds that these documents are pre-decisional because they were prepared to assist in the investigations and deliberative because their release would expose the IRS's decision-making process.  The court thus concludes that Exemption 5 and the deliberative process privilege apply to these withheld documents.

The court rejects Mr. Shannahan's argument that the IRS has not properly invoked the deliberative process privilege.  (Resp. II at 6.)  In the FOIA context, unlike

_____

[10]  In the *Vaughn* index, Ms. Mahaney states that Agents' Working Papers page 524 is withheld under Exemption 5 and the deliberative process privilege.  (Sec. Mahaney Decl. at 6 n.3 & 7.)  Ms. Mahaney, however, does not refer to page 524 when discussing the particularized rationale for withholding.  (*See* Sec. Mahaney Decl. at 7.)  The court therefore declines to determine whether Exemption 5 and the deliberative privilege process apply to Agents' Working Papers page 524.

[11]  The IRS asserts for the first time that it is withholding in part Agents' Working Papers pages 526, 531, and 534 under Exemption 5 and the deliberative process privilege.  (Sec. Mahaney Decl. at 6 n.3.)  This late assertion is troublesome and exposes the sharp power imbalance between the parties.  An agency that raises new exemptions on a rolling basis without explanation and without leave necessarily does so at the agency's own risk.  Nonetheless, because the IRS previously asserted Exemption 5 and the deliberative process privilege and Mr. Shannahan has had sufficient notice of these new assertions and an opportunity to respond, the court declines to consider these late assertions to have been waived by the IRS.  The court cautions, however, that further late assertions of exemptions may not be accepted.

the common law context, an agency is not required to submit an affidavit from an

agency head or high-level agency official to invoke the deliberative process privilege in

conjunction with Exemption 5.  *See Lardner v. U.S. Dep't of Justice*, 2005 WL 758267,

at *8 (D.D.C. Mar. 31, 2005) ("[N]o court has ever indicated that such [a high-level

agency] official must make the determination that a document comes within Exemption

5, and the case law and the declarations in this case confirm that courts routinely accept

a declaration from an employee at the agency other than a high-level official as

documentation of an Exemption 5 deliberative process claim."); *CACI Field Servs., Inc.*

*v. United States*, 12 Cl. Ct. 680, 687 n.7 (Cl. Ct. 1987) ("The only distinction between

the deliberative process privilege when arising under FOIA and the privilege when

invoked in this court is that in the context of FOIA no affidavit from the agency head is

necessary to invoke it.").  Mr. Shannahan has not identified any Ninth Circuit FOIA case

law requiring the submission of an affidavit from an agency head or high-level official

to invoke the privilege under Exemption 5.  The court concludes that the IRS has

properly invoked Exemption 5 and the deliberative process privilege.

> ii.  *Attorney Work Product Privilege and Attorney-Client Privilege*

The court declines to consider the applicability of Exemption 5 and the attorney

work product privilege and the attorney-client privilege.  The few documents withheld

pursuant to Exemption 5 and these privileges are also withheld pursuant to Exemption 3

and Exemption 7(A).  The court thus need not determine whether the IRS has met its

burden here.

5.    Summary of Exemptions

The IRS has established that Exemptions 3 and 7(A) apply with respect to all of the withheld documents prepared by the IRS and governmental agencies described in the *Vaughn* index.  The IRS has also established that Exemptions 5 and 7(E) apply with respect to a limited number of withheld documents.  Nonetheless, as discussed above, substantial questions remain.  On this record, the court cannot conclude that the IRS has met its burden with respect to similar withheld documents not described in the *Vaughn* index.

Despite this conclusion, the court declines to grant Mr. Shannahan's request for discovery at this time.  (Resp. II at 14-15.)  Discovery is the rare exception in FOIA cases.  *See Wheeler v. Cent. Intelligence Agency*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003).  The IRS has already provided the court and Mr. Shannahan with substantial additional information in the *Vaughn* index.  Although the court directs the IRS to file additional supplemental information, as discussed below, the court is satisfied that discovery would be premature at this juncture.

**D.    Segregation**

Even if a FOIA exemption applies, an agency must disclose any reasonably segregable portions of documents withheld pursuant to one of the FOIA exemptions.  5 U.S.C. § 552(b).  The court addresses the issue of segregability only regarding those documents as to which the IRS has established an applicable exemption.  "The burden is on the agency to establish that all reasonably segregable portions of a document have

1  been segregated and disclosed." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143,

2  1148 (9th Cir. 2008).  An agency can meet its burden by providing "an affidavit with

3  reasonably detailed descriptions of the withheld portions of the documents and alleging

4

5  facts sufficient to establish an exemption." *Id.*

6      The IRS has met its burden in demonstrating that the documents prepared by the

7  IRS and other governmental agencies are not reasonably segregable.  In the *Vaughn*

8  index, Ms. Mahaney provides descriptions of the withheld documents and identifies

9

10  whether they are withheld in full or in part.  With respect to the documents withheld

11  pursuant to Exemptions 3 and 7(A), which are withheld in full by the IRS, the *Vaughn*

12  index provides specific enough information to conclude that the IRS correctly

13

14  determined that the documents are not reasonably segregable.  The court finds that these

15  documents are not reasonably segregable.  The court thus grants summary judgment

16  with respect to Examination Workpapers pages 449 to 452, and 866 to 868, Agents'

17

18  Working Papers pages 727 to 747, 753 to 754, 870 to 871, 1654 to 1659, 1661 to 1675,

19  1713 to 1720, 1768 to 1774, 1776 to 1843, 1939 to 1943, 1988 to 2040, 2085 to 2208,

20  and 2210 to 2230, Interview Notes pages 1626 to 1642, and Internal Correspondence

21  pages 1711 to 1712.[12]

22

23      _____

24      [12] The court need not address whether the IRS has performed an adequate segregation
    analysis with respect to documents withheld under Exemptions 5 and 7(E) to the extent these
    documents are also withheld under Exemptions 3 and Exemption 7(A).  Additionally, the court

25  declines to consider whether the IRS has performed an adequate segregation analysis with
    respect to documents withheld under Exemption 7(C) until after the IRS files its second

26  supplement.  The court observes, however, that the *Vaughn* index provides little description of

The IRS has also met its burden in demonstrating that the portions of documents withheld in part under Exemption 5 and the deliberative process privilege are not reasonably segregable.  The IRS asserts that Agents' Working Papers pages 526, 531, and 534 are withheld in part under Exemption 5 and the deliberative process privilege.  Ms. Mahaney identifies these portions of the documents as handwritten notes and draft calculations made by IRS personnel on financial documents prepared by Fok & Chan. (Sec. Mahaney Decl. at 7, 13-14.)  The *Vaughn* index provides sufficient information to conclude that the IRS correctly determined that the portions are not reasonably segregable.  The court thus grants summary judgment with respect to the portions of Agents' Working Papers pages 526, 531, and 534 withheld under Exemption 5 and the deliberative process privilege.

**E.    Additional Submission**

Having reviewed the *Vaughn* index submitted by the IRS, the court directs the clerk to re-note the motion for summary judgment (Dkt. # 22) for consideration on November 23, 2009.  The court directs the IRS to file a second supplement in the form of an affidavit or affidavits to address the court's concerns as identified in this order.  To the extent the *Vaughn* index constitutes a representative sample of the withheld documents, the IRS should limit its supplement to the documents already described in the *Vaughn* index.  The IRS shall file this supplement by Wednesday, November 4,

the particular types of information contained in documents withheld under Exemption 7(C) and why the documents withheld in full could not be disclosed after reasonable segregation.

ORDER - 26

2009.  Mr. Shannahan shall file a response not to exceed 10 pages by Monday, November 16, 2009.  The IRS shall file a reply not to exceed 10 pages by Monday, November 23, 2009.  The court notes that if the IRS's second supplement does not resolve the issues presented, the court is strongly disinclined to allow the filing of additional supplements.

**F.      Original Documents**

The parties initially disputed whether original business documents ("Original Documents") provided by the Entities to IRS Agent Molly Mahoney were subject to disclosure.  On May 22, 2009, the parties filed a joint status report indicating that Mr. Shannahan would be allowed to make photocopies of the Original Documents.  (Joint Status Report ("JSR") (Dkt. # 35) at 1.)  Mr. Shannahan has not requested further assistance from the court with respect to the Original Documents.  The court directs Mr. Shannahan to file a status report regarding the Original Documents by September 25, 2009.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# IV.   CONCLUSION

The court GRANTS in part, DENIES in part, and RESERVES ruling in part on the IRS's motion for summary judgment (Dkt. # 22).  The court denies the IRS's motion to strike.  The court RE-NOTES the motion for consideration on November 23, 2009.

Dated this 3rd day of September, 2009.

JAMES L. ROBART
United States District Judge

ORDER - 28