1
2
3
4
5
6
7                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
8                                  AT SEATTLE
9
10   WILLIAM P. SHANNAHAN,                    CASE NO. C08-0560JLR

11                          Plaintiff,        THIRD ORDER ON
                                              DEFENDANT'S MOTION FOR
12          v.                                SUMMARY JUDGMENT

13   INTERNAL REVENUE SERVICE,                    AND

14                          Defendant.        ORDER DENYING PLAINTIFF'S
                                              MOTION FOR SUMMARY
15                                            JUDGMENT

16                                I.  INTRODUCTION

17          This matter comes before the court for a third time on Defendant Internal Revenue

18   Service's ("IRS") motion for summary judgment (Dkt. # 22) and for the first time on

19   Plaintiff William P. Shannahan's motion for summary judgment (Dkt. # 46).  Previously,

20   this court twice determined that the IRS has not met its burden to withhold documents

21   under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and twice directed the

22

IRS to supplement its declarations in support of withholding. (*See* Order dated April 27, 2009 ("Order I") (Dkt. # 32); Order dated September 3, 2009 ("Order II") (Dkt. # 44).) Having reviewed the IRS's latest submissions, as well as the briefing and the balance of the record, the court GRANTS the IRS's motion for summary judgment (Dkt. # 22) and DENIES Mr. Shannahan's motion for summary judgment (Dkt. # 46).

## II. BACKGROUND

The parties are familiar with the background of this case, and the court will not repeat it in full here. For a complete background, the court directs the parties to the court's two previous orders. (*See generally* Order I; Order II.)

## III.    ANALYSIS

**A.    Preliminary Matters**

1.    Sufficiency of the *Vaughn* Index

The court previously directed the IRS to provide additional information regarding how it selected the documents described in the *Vaughn* index. In her third declaration, Meghan G. Mahaney, an IRS attorney and the individual who prepared the *Vaughn* index, states that she did not choose the documents at random but rather selected representative documents. (Third Declaration of Meghan G. Mahaney ("Third Mahaney Decl.") (Dkt. # 50) ¶¶ 7-9.) Ms. Mahaney explains in detail the method she used to select the documents included in the *Vaughn* index. (*Id.*) Mr. Shannahan does not renew his argument that the *Vaughn* index does not constitute a representative sample of the withheld documents. On this record, having reviewed Ms. Mahaney's third declaration, the court is satisfied that the *Vaughn* index is representative of the withheld documents.

In light of this determination and in accordance with its prior findings, the court grants summary judgment under Exemptions 3 and 7(A) with respect to all of the documents prepared by the IRS and other government agencies. The court previously found that the IRS had established that Exemptions 3 and 7(A) apply with respect to all of the withheld documents prepared by the IRS and other government agencies described in the *Vaughn* index. The court also found that those documents are not reasonably segregable, and thus granted summary judgment in favor of the IRS. The court declined, however, to grant summary judgment with respect to those documents prepared by the IRS and other government agencies but not described in the *Vaughn* index because the court could not determine whether the *Vaughn* index constituted a representative sample of the withheld documents. Having now determined that the *Vaughn* index is representative, the court grants summary judgment under Exemptions 3 and 7(A) with respect to all documents prepared by the IRS and other government agencies.

2. <u>Original Documents</u>

The court also previously directed Mr. Shannahan to file a status update regarding the Original Documents. Mr. Shannahan represents that he has now obtained copies of the Original Documents. (Dkt. # 45.) On this record, the court finds this issue to have been resolved between the parties.

3. <u>Special Agent's Report</u>

In preparing its latest submissions, the IRS located a signed, final copy of the special agent's report for the Cheungs that had not been previously identified, but is responsive to the FOIA requests. (Declaration of Steven J. Bellis ("Bellis Decl.") (Dkt. #

51) ¶ 19.)  The report is 41 pages in length, and a draft copy of the report was previously identified as responsive by the IRS.  (*Id.*)  The IRS argues that the report is properly withheld under Exemptions 3 and 7(A) in accordance with the court's second order.  (*Id.*)  Mr. Shannahan does not address whether this report may be withheld.  On this record, the court finds that the report was prepared by the IRS, that the IRS has established that Exemptions 3 and 7(A) apply for the reasons articulated in the court's prior orders, and that the report is not reasonably segregable.  The court thus grants summary judgment in favor of the IRS with respect to the report.

**B.   Legal Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved."  *Los Angeles Times Commc'ns, LLC v. Dep't of the Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006).  The court conducts a *de novo* review of an agency's response to a FOIA request.  5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Justice v. Reporters*

*Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989). The usual summary judgment standard does not extend to FOIA cases because the facts are rarely in dispute and courts generally need not resolve whether there is a genuine issue of material fact. *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 800 (9th Cir. 1996). Courts instead follow a two-step inquiry when presented with a motion for summary judgment in a FOIA case. *Los Angeles Times Commc'ns*, 442 F. Supp. 2d at 893.

First, courts must evaluate "whether the agency has met its burden of proving that it fully discharged its obligations under the FOIA." *Id.* The agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents. *Zemansky v. U.S. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985). Second, if the agency satisfies its initial burden, the court must determine "whether the agency has proven that the information that it did not disclose falls within one of the nine FOIA exemptions." *Los Angeles Times Commc'ns*, 442 F. Supp. 2d at 894. In meeting its burden, "the government may not rely upon 'conclusory and generalized allegations of exemptions.'" *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980) (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)).

## C.  FOIA Exemptions

In its motion for summary judgment, the IRS argues that the withheld documents are exempt from disclosure under FOIA Exemptions 3, 5, 6, 7(A), 7(C), and 7(E). Mr. Shannahan contends that the IRS has failed to present sufficient information to justify withholding under these exemptions. In its two prior orders, the court ruled on many, but not all, of the issues raised by the IRS's motion. First, the court determined that the

IRS conducted an adequate search. Second, the court denied the IRS's motion for summary judgment with respect to Exemptions 6 and 7(E). Third, the court granted in part the IRS's motion for summary judgment under Exemptions 3, 5, and 7(A). The court reserved ruling on the remaining issues. In light of its prior orders, the court once again begins its inquiry with the second step of the FOIA analysis: has the IRS established that the remaining withheld documents fall within one or more of the claimed FOIA exemptions?

    1.   <u>Exemption 3 and 26 U.S.C. § 6103</u>

       Exemption 3 of FOIA incorporates nondisclosure protections established in other federal statutes. 5 U.S.C. § 552(b)(3). 26 U.S.C. § 6103(a) prohibits the disclosure of returns or return information and qualifies as a statute that exempts disclosure within the meaning of Exemption 3. *Kamman v. U.S. Internal Revenue Serv.*, 56 F.3d 46, 48 (9th Cir. 1995); *Johnson v. Comm'r*, 239 F. Supp. 2d 1125, 1137 (W.D. Wash. 2002). Section 6103(a) provides that "[r]eturns and return information shall be confidential," and generally prohibits the government from disclosing returns and return information. 26 U.S.C. § 6103(a). The statute defines "return information" to include:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . . .

26 U.S.C. § 6103(b)(2)(A).  Despite the general rule, the IRS may disclose return information to a taxpayer so long as "the Secretary determines that such disclosure would not seriously impair Federal tax administration."  26 U.S.C. § 6103(e)(7).

### i.  Prior Orders

The court previously determined that the withheld documents constitute "return information" under 26 U.S.C. § 6103(b)(2).  In addition, the court previously determined that the IRS had met its burden under Exemption 3 and 26 U.S.C. § 6103 with respect to those documents prepared by the IRS or other government agencies and described in the *Vaughn* index.  Here, the court addresses only those documents prepared by third parties and the Electronic Database.

### ii.  Serious Impairment of Federal Tax Administration

A district court reviews *de novo* the IRS's determination that the release of withheld documents would seriously impair federal tax administration.  *Long v. U.S. Internal Revenue Serv.*, 742 F.2d 1173, 1182-83 (9th Cir. 1984); *Pac. Fisheries, Inc. v. Internal Revenue Serv.*, No. C04-2436JLR, 2009 WL 1249296, at *3 (W.D. Wash. May 6, 2009).  The IRS bears the burden on this issue.  *Long*, 742 F.2d at 1183.  Although the IRS's determination is entitled to deference, the court nonetheless reviews the determination *de novo* and "must satisfy itself, on the basis of detailed and nonconclusory affidavits, that the Commissioner is correct in his belief that the disclosure of [the information requested] by [the plaintiff] would pose a substantial risk of impairing the collection, assessment, or enforcement of the tax laws."  *Long*, 742 F.2d at 1183.  Federal tax administration, as defined at 26 U.S.C. § 6103(b)(4), "embraces

assessment, collection, enforcement and litigation under laws governing the application of the internal revenue laws," *United States v. Hobbs*, 991 F.2d 569, 573 (9th Cir. 1993), and "unquestionably includes the criminal enforcement of the internal revenue laws," *Youngblood v. Comm'r*, No. 2:99-CV-9253-R(RNBX), 2000 WL 852449, at *9 (C.D. Cal. Mar. 6, 2000).

The IRS argues that all of the documents may be withheld pursuant to Exemption 3 because their disclosure would seriously impair federal tax administration. Agent Caesar White, who previously served as the supervisory special agent for criminal investigations in the Seattle, Washington, Office of the IRS, asserts that release of the documents would or could (1) "allow the Cheungs to determine the nature, direction, scope, and limits of the criminal proceedings, and the strategies and theories being utilized by the government"; (2) "allow the Cheungs earlier and greater access to information about the proceedings than they would otherwise be entitled to receive, and would deprive the government of reciprocal discovery since the Cheungs are now unavailable"; (3) "enable the Cheungs to craft explanations or defenses based upon the government's analysis, depriving the government of the facts known to the Cheungs"; and (4) "enable the Cheungs to conceal or disguise income, or take other steps to avoid having income attributed to them." (Declaration of Caesar White ("White Decl.") (Dkt. # 22-4) ¶ 15.) Mr. Shannahan does not dispute that the types of harm alleged by the IRS would constitute serious impairment of federal tax administration. Rather, he argues that the IRS has not demonstrated a rational connection between release of the documents and the alleged harms.

a. Documents Obtained by the Government Pursuant to a Mutual Legal
Assistance Agreement Between Hong Kong and the United States

In his declaration, Steven J. Bellis, the supervisory special agent for criminal

investigations in the Seattle, Washington, Office of the IRS, explains in depth the bases

for his determination that the release of the withheld documents will seriously impair

federal tax administration.  Agent Bellis states that 302 pages of the withheld documents

were obtained pursuant to a mutual legal assistance agreement ("MLAA") between Hong

Kong and the United States.  (Bellis Decl. ¶¶ 6, 9.)  Because there is not a standing tax

treaty in place between Hong Kong and the United States, the United States must enter

into an agreement regarding the exchange of information during the course of specific

criminal investigations.  (*Id.* ¶ 9.)  Hong Kong determines whether to enter into an

agreement on a case-by-case basis.  (*Id.*)  In this matter, Agent Bellis states that the terms

of the MLAA require information obtained to remain confidential and to be used only for

the criminal investigation.[1]  (*Id.* ¶ 10.)  Although Agent Bellis acknowledges that some of

the information obtained pursuant to the MLAA "may be readily available to the

Cheungs outside the context of this investigation," he emphasizes that releasing the

documents so obtained would violate the confidentiality provisions of the MLAA.  (*Id.* ¶¶

9-12.)  In his view, this would potentially interfere with the government's ability to use

---

[1]  The IRS does not provide a copy of the actual MLAA at issue in this matter because
the "MLAA reveals what factual information the government possessed at the time it was
executed as well as its theories of the case."  (Bellis Decl. ¶ 9.)  Instead, the IRS has provided a
copy of a "standard" MLAA.  (*Id.* ¶ 10 & Ex. B.)

these documents at trial (*id.* ¶ 11) and jeopardize the IRS's ability to obtain information from Hong Kong in future investigations (*id.* ¶ 12). Specifically, Agent Bellis declares:

> Not only would violating the terms of the MLAA hamper tax administration as it pertains to the Cheungs, but it would also place at risk the government's future ability to obtain information from the Hong Kong government in criminal investigations. If Hong Kong no longer trusts the United States government to comply with the terms of MLAAs that it enters into, then Hong Kong will be less likely to enter into such agreements and/or cooperate with the United States government in the future.

(*Id.*)

In *Pacific Fisheries, Inc. v. Internal Revenue Service*, this court addressed an analogous argument in support of withholding documents made by the IRS with respect to a tax treaty between the United States and Russia. 2009 WL 1249296, at *2-3. There, the IRS argued that release of certain tax information requested under FOIA would constitute a serious impairment of federal tax administration because, in essence, it would disrupt Russia's confidence in the exchange-of-information process and potentially chill future cooperation, thereby interfering with other United States civil and criminal tax investigations. *Id.* at *2. The court accepted the IRS's argument in *Pacific Fisheries*, finding that the IRS's affiant had "provided specific justifications for why release of the material at issue would seriously impair federal tax administration" and that these justifications were grounded in the affiant's experience. *Id.* at *3. The court also concluded that the IRS's determination regarding foreign policy issues was entitled to some deference "as the court is not in a position to independently determine what actions

on the part of the United States government would or would not impair treaty relations with another nation." *Id*.

Here, as in *Pacific Fisheries*, the court is persuaded that the IRS has met its burden of showing that the release of the withheld documents obtained pursuant to the MLAA would pose a risk of substantial interference with federal tax administration. Agent Bellis has provided a specific, legitimate reason for withholding these documents, and this reason is grounded in his experience as an IRS special agent. Further, the court determines that Agent Bellis's conclusions are entitled to some deference as the court is not in a position to independently evaluate what actions on the part of the IRS or the United States government would impair relations between Hong Kong and the United States. *See id*. Mr. Shannahan has not brought forth evidence to controvert Agent Bellis's justifications for withholding these documents. Therefore, the court concludes that the IRS has met its burden of establishing that Exemption 3, in connection with 26 U.S.C. § 6103, applies with respect to those documents obtained pursuant to the MLAA.

      b.     Documents Obtained by the Government from a Confidential Informant or Confidential Informants[2]

Agent Bellis next explains that a number of the withheld documents were obtained from a confidential informant or informants.[3] Agent Bellis is the supervisory

---

    [2] The IRS does not argue that the documents may be withheld under Exemption 7(D), which protects confidential sources. 5 U.S.C. § 552(b)(7)(D); s*ee generally Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 813-15 (9th Cir. 1995). Regardless of whether the IRS could have argued that the documents obtained from the informant are exempt under Exemption 7(D), the court is satisfied that the IRS may also raise similar arguments in support of withholding under other FOIA exemptions.

investigative agent responsible for overseeing the assistance of the informant.  (Bellis Decl. ¶ 4.)  He states that the assistance of the informant was conditioned on the government keeping his or her identity confidential.  (*Id.* ¶ 13.)  Agent Bellis has determined that the release of the documents obtained from the informant would cause serious impairment of federal tax administration by:  (1) revealing the identity of the informant, either directly or indirectly; (2) breaching the IRS's agreement to maintain the confidentiality of the informant's identity; (3) discouraging future cooperation from the informant; (4) exposing the informant to a risk of harm; and (5) chilling other individuals from providing information to the government conditioned on confidentiality.  (*Id.*)  Mr. Shannahan responds that the IRS has not shown that releasing these documents will reveal the informant's identity.

On this record, the court finds that the release of documents obtained from the confidential informant is likely to cause substantial interference with federal tax administration.  Agent Bellis has addressed this court's previous concerns by explaining in detail why the release of documents obtained from the informant poses a risk of disclosing his or her identity.  Contrary to Mr. Shannahan's arguments, Agent Bellis clearly sets out the basis for his belief that release of these documents would compromise the informant.  Specifically, he explains that these documents consist of "handwritten notes written in a third party's own handwriting, documents attested to by a third party,

---

[3] The IRS does not specify the number of informants connected to the investigation of the Cheungs.  In this order, the court will refer to the informant or informants in the singular for the sake of simplicity.

and documents to which only certain individuals have access." (*Id*. ¶ 16.) It follows, as Agent Bellis submits, that access to these types of documents will allow the Cheungs either to identify directly the informant or to winnow down the list of possible informants. (*Id*.) This danger is not easily forestalled. Even were the IRS to redact the most revealing portions of these documents—such as all handwritten notes, for instance—this does not fully address the risk of disclosure as the mere knowledge of which documents were obtained by the IRS may be sufficient to reveal the identity of the informant because "only certain individuals" have access to the documents. (*Id*.)

In response, Mr. Shannahan argues that the *Vaughn* index already provides sufficient information to reveal the identity of the confidential informant and thus further disclosure is not likely to cause additional harm. In other words, to the extent the IRS's concerns are legitimate, the *Vaughn* index, by describing specific financial documents prepared by third parties that are now in the IRS's possession, may have caused the very harm the IRS now seeks to prevent. This argument is not without some force, but it does not account for the broader picture. First, the *Vaughn* index describes only a small number of the total documents withheld. Mr. Shannahan has made no showing that the descriptions provided in the *Vaughn* index, in and of themselves, have compromised or are sufficient to compromise the informant. Second, the *Vaughn* index generally does not specify whether particular financial documents were obtained pursuant to the MLAA or from the informant. Third, the release of the third-party documents described in the *Vaughn* index, as well as additional third-party documents not described in the *Vaughn* index, is reasonably likely to increase the risk of disclosure. Fourth, the *Vaughn* index

does not include handwritten notes and other indicia of identity that may be particularly revealing. On balance, these considerations undercut Mr. Shannahan's argument and demonstrate that the IRS's concerns remain acute even after having filed the *Vaughn* index.

Furthermore, the court is disinclined to countenance the argument that the IRS has undermined the basis for its claimed exemption through the very act of complying with the court's order and providing the *Vaughn* index. The court directed the IRS to supplement its motion for summary judgment with a *Vaughn* index in part as a means to provide Mr. Shannahan with sufficient information upon which to advocate intelligently for the release of the withheld documents. Mr. Shannahan may, of course, use the information provided in the *Vaughn* index to press for disclosure. Nevertheless, without an additional showing, the court will not accept the argument that the *Vaughn* index itself vitiates the IRS's claimed basis for nondisclosure.

In sum, the court concludes that the IRS has met its burden of establishing that Exemption 3, in connection with 26 U.S.C. § 6103, applies with respect to those documents obtained from the confidential informant.

        c.    Documents Obtained by the Government from Third-Party Sources by Subpoena

The IRS also obtained documents from third parties by subpoena. (Bellis Decl. ¶ 14.) Agent Bellis states that the disclosure of these documents would reveal the scope of the government's investigation. (*Id.*; *see* Third Mahaney Decl. ¶ 10.) He reasons that the Cheungs are not aware of precisely what information third parties have provided to the

government, which party provided particular information, and what information the government has not been able to obtain.  (Bellis Decl. ¶ 14.)  The IRS acknowledges that the Cheungs may be familiar with the financial transactions at issue in the criminal investigation, that the documents detailing those transactions may have been created by third parties instead of by the government, and that these third-party documents may contain primarily factual content without accompanying governmental analysis.  Despite these considerations, Agent Bellis states that the Cheungs are unlikely to know exactly what evidence the government has collected against them because the government has used a range of sources to gather evidence, including the MLAA, subpoenas, and the confidential informant.  (*Id*. at 3.)  Mr. Shannahan responds that the IRS still has not provided sufficient detail to support withholding on this ground.

The court is persuaded that the IRS has met its burden in support of withholding with respect to those documents obtained by subpoena.  These documents were not provided to the government by the Entities or the Cheungs.  (Third Mahaney Decl. ¶ 10.)  Accordingly, though the Cheungs may be familiar with many of these documents, the Cheungs do not have knowledge of the full scope of which documents were obtained by the government in its investigation, nor which documents were not obtained.  Other courts have observed that even where documents pertain only to the plaintiff, not to third parties, these documents nonetheless may be withheld under Exemption 3 and 26 U.S.C. § 6103 if they were "obtained from IRS databases and pursuant to summonses and not from plaintiff."  *Radcliffe v. Internal Revenue Serv.*, 536 F. Supp. 2d 423, 439 (S.D.N.Y.

2008); *see May v. Internal Revenue Serv.*, No. 90-1123-CV-W-2, 1991 WL 328041 (W.D. Mo. Dec. 9, 1991).

The facts of this case are unlike those of *Lion Raisins v. United States Department of Agriculture*, 354 F.3d 1072 (9th Cir. 2004), wherein the Ninth Circuit directed the United States Department of Agriculture ("USDA") to disclose copies of USDA-retained originals of documents identical to the copies the USDA had left in the plaintiff's possession.[4] 354 F.3d at 1084-85. The Ninth Circuit reasoned that "[b]ecause [the plaintiff] already has copies of the documents it seeks from USDA, USDA cannot argue that revealing the information would allow [the plaintiff] premature access to the evidence upon which it intends to rely at trial." *Id*. at 1085. In *Radcliffe*, the court distinguished *Lion Raisins* and similar cases on the ground that the documents "were either provided by the plaintiff to the government or were already disclosed in some way by the government itself." *Radcliffe*, 536 F. Supp. 2d at 439. Though Mr. Shannahan has presented evidence in support of his contention that the Entities and the Cheungs are familiar with some of the withheld documents, he has not shown that the Entities or the Cheungs actually possess copies of these documents. (*See* Declaration of Patrick Kan (Dkt. # 48) ¶¶ 5-6.) Further, it remains undisputed that the Entities and the Cheungs did not provide these documents to the government and that the government has not provided copies of these documents to the Entities or the Cheungs.

---

[4] In *Lion Raisins*, the Ninth Circuit addressed Exemption 7(A), not Exemption 3. *Lion Raisins*, 354 F.3d at 1081. Nevertheless, the court is persuaded that the Ninth Circuit's reasoning extends with similar force to Exemption 3 when the bases for the agency's nondisclosure under Exemptions 3 and 7(A) overlap, as they do in this case.

This court agrees with the reasoning of *Radcliffe*, and declines to extend *Lion Raisins* to the facts of this case. The Entities and the Cheungs did not provide these documents to the government, the government has not disclosed the documents, and Mr. Shannahan has not shown that the Entities or the Cheungs have actual possession of the documents as opposed to a general knowledge of their contents. Agent Bellis has articulated a specific basis for his determination that the release of these documents would cause substantial interference with federal tax administration. Agent Bellis's determination is entitled to some deference. *Long*, 742 F.2d at 1182-83. The court concludes that the IRS has met its burden of establishing that Exemption 3, in connection with 26 U.S.C. § 6103, applies with respect to those documents obtained by subpoena.

d.      The Electronic Database

The court previously determined that the IRS had not provided adequate information upon which to evaluate the withholding of the Electronic Database. In his declaration, Agent Bellis remedies this deficiency by describing in detail both the type of information contained in the Electronic Database and the source of the information. The Electronic Database "details and documents a vast majority of the evidence obtained by the government for use in the Cheungs' criminal trial and was comp[il]ed and organized by the U.S. government." (Bellis Decl. ¶ 17.) The Electronic Database contains charts detailing financial information pertaining to the Cheungs and the Entities, summaries of the information, and agent notes. (*Id.*) The charts are broken down by table, queries, forms, and reports, "all of which were prepared by the government as part of the criminal

investigation of the Cheungs." (*Id.*)  The Cheungs and the Entities did not provide any of the information contained in the Electronic Database.  (*Id.*)

Agent Bellis states that the release of any portions of the Electronic Database would seriously impair federal tax administration by providing the Cheungs with knowledge of the government's theories and analysis of the case.  (*Id.* ¶ 18.)  He also states that disclosure would reveal to the Cheungs what information the government has not been able to obtain.  (*Id.*)  Finally, Agent Bellis states that the IRS's concerns related to the MLAA and the protection of the confidential informant apply with similar force to the Electronic Database because some of the information was obtained through these sources.  (*Id.*)  Mr. Shannahan responds that the IRS has not shown why the information provided by third parties contained in the Electronic Database cannot be segregated and released.

On this record, the court finds that the release of the Electronic Database, or any portion thereof, is likely to cause substantial interference with federal tax administration. As with the release of other documents prepared by the IRS, the release of the Electronic Database would expose the internal workings of the criminal investigation, including its scope, focus, and strengths and weaknesses, thereby offering a depth of insight into the investigation that otherwise would not be available to the Cheungs and that poses a strong likelihood of causing substantial interference with federal tax administration.  Although the Cheungs may know or have access to some of the factual information in the Electronic Database, it does not follow that the Cheungs know the precise contours of the government's knowledge or the ways in which it used or is using the factual information.

In addition, Agent Bellis's determination that the release of these documents could enable the Cheungs to craft explanations or defenses or to conceal or disguise income is entitled to some deference. *Long*, 742 F.2d at 1182-83. Therefore, the court concludes that the IRS has met its burden of establishing that Exemption 3, in connection with 26 U.S.C. § 6103, applies to the Electronic Database.

e. Summary of Exemption 3

In sum, the court concludes that the IRS has met its burden of showing that Exemption 3 and 26 U.S.C. § 6103 apply to the documents prepared by third parties and to the Electronic Database. Exemption 3 thus applies to all of the withheld documents.

2. Exemption 7

Exemption 7 of FOIA protects from disclosure "records or information compiled for law enforcement purposes" to the extent that the agency justifies its decision to withhold the documents by reference to one of six enumerated types of harm. 5 U.S.C. § 552(b)(7). Judicial review of an Exemption 7 claim requires a two-part inquiry. *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982). First, the court must determine whether the documents qualify as records or information compiled for law enforcement purposes. *Id.* Second, the agency must show that disclosure would result in one of the six types of harm. *Id.*

i. *Prior Orders*

In its first order, the court determined that the withheld documents constitute records or information compiled for law enforcement purposes. The court also concluded that the IRS had met its burden under Exemption 7(C), but declined to grant

summary judgment with respect to documents withheld under this exemption because the IRS had not performed a segregation analysis. In its second order, the court granted summary judgment under Exemption 7(A) with respect to those documents prepared by the IRS and other government agencies and described in the *Vaughn* index.

ii. *Exemption 7(A)*

Exemption 7(A) permits an agency to withhold law enforcement records that "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "The IRS need only make a general showing that disclosure of its investigatory records would interfere with its enforcement proceedings." *Lewis v. Internal Revenue Serv.*, 823 F.2d 375, 380 (9th Cir. 1987); *Barney v. Internal Revenue Serv.*, 618 F.2d 1268, 1272-73 (8th Cir. 1980). In order to withhold documents under Exemption 7(A), the agency "must establish that it is a law enforcement agency, that the withheld documents were investigatory records compiled for law enforcement purposes, and that disclosure of those documents would interfere with pending enforcement proceedings." *Lion Raisins*, 354 F.3d at 1082 (quoting *Lewis*, 823 F.2d at 379).

The IRS has met its burden under Exemption 7(A) with respect to all of the remaining withheld documents and the Electronic Database. First, the IRS is a law enforcement agency for purposes of Exemption 7(A). *See Church of Scientology Int'l v. U.S. Internal Revenue Serv.*, 995 F.2d 916, 919 (9th Cir. 1993); *Lewis*, 823 F.2d at 379. Second, the court has previously concluded that the withheld documents constitute investigatory records compiled for law enforcement purposes. Third, the IRS has now demonstrated that disclosure of the withheld documents would interfere with

enforcement proceedings. As in its prior orders, the court's reasoning with respect to Exemption 3 and 26 U.S.C. § 6103 applies with similar force here. In his declaration, Agent Bellis explains in sufficient detail how release of the withheld documents would interfere with enforcement proceedings. The court concludes that the IRS has met its burden of establishing that Exemption 7(A) applies to all of the remaining documents. Therefore, in light of the court's prior orders, Exemption 7(A) applies with respect to all of the withheld documents.

Having concluded that the IRS has met its burden with respect to all of the withheld documents under both Exemptions 3 and 7(A), the court declines to consider the additional exemptions claimed by the IRS at this time.

**D. Segregation**

Even if a FOIA exemption applies, an agency must disclose any reasonably segregable portions of documents withheld pursuant to one of the FOIA exemptions. 5 U.S.C. § 552(b). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). An agency can meet its burden by providing "an affidavit with reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." *Id.*

The IRS has met its burden of demonstrating that the documents withheld under Exemptions 3 and 7(A) are not reasonably segregable. In the *Vaughn* index, Ms. Mahaney provided descriptions of the withheld documents and identified whether they are withheld in full or in part. With respect to documents withheld pursuant to

Exemptions 3 and 7(A), which are withheld in full, the *Vaughn* index provides sufficiently specific information upon which to conclude that the IRS correctly determined that the documents are not reasonably segregable. Though the IRS did not provide substantial additional information regarding the issue of segregability in its latest round of submissions, the *Vaughn* index is adequate to address segregability on the present record now that the IRS has explained in more depth the justifications for its decision to withhold the documents under Exemptions 3 and 7(A). The court thus grants summary judgment with respect to all remaining documents.

**E.    Mr. Shannahan's Motion for Summary Judgment**

Having granted summary judgment in favor of the IRS, the court denies Mr. Shannahan's motion for summary judgment. Mr. Shannahan argues that the court should grant summary judgment with respect to those documents and factual information supplied to the government by third parties. The court has addressed these issues in the course of ruling on the IRS's motion for summary judgment.

# IV.  CONCLUSION

For the foregoing reasons, as well as the reasons stated in the court's two prior orders, the court ORDERS as follows:

(1) The court GRANTS the IRS's motion for summary judgment (Dkt. # 22);

(2) The court DENIES Mr. Shannahan's motion for summary judgment (Dkt. # 46); and

(3) The court directs the clerk to enter judgment in favor of the IRS.

Dated this 4th day of January, 2010.

JAMES L. ROBART
United States District Judge